[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
The plaintiffs, Franz Douskey and Sarah Heath, appeal a decision by the defendant, the Planning Zoning Commission of the Town of Hamden ("the Commission"), approving an application (#99-883) for special permit and site plan approval filed by the defendant Ravenswood Company, LLC ("Ravenswood"). Ravenswood filed its application on or about July 29, 1999. The Commission held a public hearing on the application on September 14, 1999, following which, on the same date, the Commission voted to approve said application, with conditions. This appeal followed. A hearing was held on May 4, 2000, at which the plaintiffs were found aggrieved for the purpose of standing to prosecute this appeal. CT Page 9984
 II
Ravenswood filed its application for special permit and site plan approval to build a 56 unit, 5 building condominium on a lot of 6.3 acres, designated as 39 Ives Street. The property lies generally to the rear of existing dwellings fronting on Ives Street (Conn. Rte. 22) to its north. Access to the property is from Ives Street. The parcel is bounded by Whitney Avenue to the west, by a number of dwellings fronting on South New Road to the east and by the Mount Carmel Connector to the south. The property is in an R-4 District. Under the provisions of Section 718 of the Hamden Zoning Regulations ("Regulation"), multi-family dwellings are allowed in an R-4 District only by special permit and site plan approval.
The application at issue is not the first application for use of the site for multi-family dwellings. Circa 1987, applications to construct 59 or 60 units of multi-family housing were denied by the Commission after the applicant had obtained a variance allowing access to the property from Ives Street. In 1988, an application for 58 units was approved, but the project was never built. In 1998, Ravenswood made an application substantially the same as that now before the Court. The Commission approved that application, subject to conditions. The plaintiffs appealed that decision to the Court (CV 98-0416153), and the Court, Levin, J.,
sustained that appeal, finding that the applicant had made an improper and prejudicial ex parte communication to the Commission during its deliberations, following the close of the public hearing on that application. The defendant, Ravenswood, has raised, as a special defense, that "The plaintiffs claims were litigated in a previous appeal . . . Under the doctrine of res judicata or collateral estoppel, the plaintiff is barred from relitigating claims already decided in the previous appeal."
 III
Ravenswood's claim of res judicata or collateral estoppel:
In his decision in CV-98-0416153, Judge Levin decided several claims identical or similar to claims raised by the plaintiffs in the instant matter.
The defendant, Ravenswood, claims that issues decided by the Court in deciding the appeal of its 1998 application (CV 98-0416153) are res judicata so far as the instant appeal is concerned. This Court is not persuaded. "For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must CT Page 9985 have been actually decided and the decision must have been necessary to the judgment." Virgo v. Lyons, 209 Conn. 497, 501, quoting fromGionfriddo v. Gartenhouse Café, 15 Conn. App. 392, 401-02, (citations omitted). While the issues in question were "fully and fairly litigated" in the previous action, and were "actually decided," such decisions were not "necessary to the judgment." The sole claim on which the prior appeal was sustained was that of improper ex parte communication, which that Court characterized as "a claim that the process, rather than the commission's decision, was flawed." The Court's other findings, all adverse to the plaintiffs, were not necessary to the judgment, which was in favor of the plaintiffs.
Similarly, a claim that the Court's conclusions on the issues in question constituted "the law of the case" must fail. The law of the case principle applies only to those matters essential to the [trial] court's determination, Dacey v. Connecticut Bar Association, 184 Conn. 21, 25
(citations omitted, bracketed word added).
The defendant, Ravenswood, has failed to establish its Special Defense. The Court will conduct its own review of the claims at issue. The Court is free to adopt the reasoning of Levin, J., as it sees fit.
 IV
Judicial review of the Commission's decision is limited to a determination of whether the decision was arbitrary, illegal or in abuse of discretion, Whitaker v. Zoning Board of Appeals, 179 Conn. 650, 654. The Commission is vested with a large measure of discretion, and the burden of showing the agency has acted improperly rests upon the one who asserts it, Mario v. Fairfield, 217 Conn. 164, 169. Courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution, Buruham v. Planning Zoning Commission, 189 Conn. 261, 266
(citation omitted). However, a court cannot take the view in every case that the discretion exercised by the local authority cannot be disturbed, for if it did the right of appeal would be empty, Daughters ofSt. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53, 57
(citation, quotation marks omitted).
A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations, HousatonicTerminal Corporation v. Planning Zoning Board, 168 Conn. 304, 307
(citation omitted). When considering an application for a special permit, a zoning authority acts in an administrative capacity and its function is to determine whether the proposed use is permitted under the CT Page 9986 regulations and whether the standards set forth in the regulations and statutes are satisfied, Daughters of St. Paul, Inc. v. Zoning Board ofAppeals, supra, at 56 (citations omitted). However, "Although it is true that the zoning commission does not have discretion to deny a special permit when the proposed use meets the standards, it does have the discretion to determine whether the proposal meets the standards set forth in the regulations," Irwin v. Planning Zoning Commission,244 Conn. 619, 628.
Where the Commission states its reasons for a decision the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the Commission is required to apply under the zoning regulations, Irwin v. Planning Zoning Commission, supra, at 629 (citation, quotation marks omitted). Failure of an agency to make findings, even those required by statute or regulation, does not render its decision null and void: rather, the reviewing court must search the record of the hearing before that commission to determine if there is an adequate basis for its decision, Samperi v. Inland Wetlands Agency,226 Conn. 579, 588-89, quoting from Gagnon v. Inland Wetlands Watercourses Commission, 213 Conn. 604, 611. When, as here, the Commission acts in an administrative capacity, the evidence to support any such reason must be substantial, Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 540. The "substantial evidence" standard requires enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury, Kaufman v. Zoning Commission,232 Conn. 122, 151. The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence, Samperi v. InlandWetlands Agency, supra, at 588 (citations, internal quotation marks omitted).
 V
The reasons given by the Commission are reflected in the Minutes of the September 14, 1999 meeting (Return of Record #36, p. 14): "Mr. DelVecchio made a motion to approve Special Permit/WS 99-883, subject to the following conditions. With the changes noted below, the proposal conforms to the basic site plan objectives specified in Section 844 of the Hamden Zoning Regulations. The application also meets the Special Permit Threshold Decision criteria specified in Section 826. The proposal should have no adverse impact on the health, safety and welfare of the surrounding area." (The Commission voted, five to three, in favor of the motion). The plaintiffs challenge the Commission's decision on a number of grounds. CT Page 9987
 VI
The claim that the defendant Commission failed to give the plaintiffs personal notice of the filing of the subject application:
The notice requirements for a public hearing on an application for special permit are set forth in General Statutes, § 8-26e, which reads, in pertinent part:
 "Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice, at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before the date of such hearing. In addition to such notice, such planning commission may, by regulation, provide for notice by mail to persons who are owners of land which is adjacent to the land which is the subject of the hearing."
The Zoning Regulations of the Town of Hamden ("Regulations"), § 825, titled "Additional Notice," provides:
 "In addition to published notice, the Commission shall give notice of any such hearing at least ten (10) days prior to the date of the hearing to the applicant filing the application and to the property owners of record on the date of filing the application, whose property according to the land records, is located within, abutting and directly across the street from the property on which the Special Permit use is proposed to be established."
Thus, to substantiate their claim, the plaintiffs must show that their property is located within the applicant's property, abuts said property or is directly across the street from it. This the plaintiffs have failed to do. Their property is not within or abutting the applicant's property, and is not directly across the street. The plaintiffs were not entitled to individual notice under the statute or the regulation.
But the plaintiffs contend that, as the successful appellants of a prior decision of the Commission approving substantially the same application, they were entitled to individual notice of the hearing on the new application, and that failure of the defendant Commission to afford CT Page 9988 the plaintiffs such notice deprived the plaintiffs of their due process rights under the Constitutions of the United States and of Connecticut. The plaintiffs' citation of Fong v. Planning Zoning Board of Appeals,212 Conn. 628, is inapposite. Fong held that a successful appellant at the administrative level is a necessary party to a Court appeal of the administrative agency's decision and that notice to that party must generally satisfy the requirements for ordinary civil process. The plaintiffs have failed to establish, by a fair preponderance of the evidence, that they were entitled to individual notice of the special permit application, the subject of this appeal. Neither the fact that the plaintiffs had filed a motion for reconsideration in the prior appeal nor that the appeal period for the Court's decision in the prior matter had not run at the time of the filing of the application now before us, leads to the conclusion that the plaintiffs were entitled to individual notice.
The plaintiffs claim that as a result of the Commission's failure to give them individual notice pursuant to Regulations, § 825, the plaintiffs were denied adequate time to obtain expert testimony relating to water and traffic issues. They complain that the Commission failed to follow the suggestion of the Town Planning Consultant that the hearing be continued so he could equip himself to make a recommendation regarding the application (Transcript, p. 83). The Town Planning Consultant was a resource for the Commission and the Commission was free to adopt or discard any recommendation by him, and free to proceed in the absence of a recommendation by him, Laufer v. Conservation Commission,24 Conn. App. 708, 712. The plaintiffs and their attorney attended the public hearing and participated vigorously, as they apparently did in the hearing on the 1998 application. They have failed to establish that the Commission was obligated to allow them additional time to prepare their opposition to the subject application and failed to establish that they, the plaintiffs, were "entitled" to the benefit of an opinion of the Town Planning Consultant. The Court finds that the plaintiffs have failed to establish that the refusal of the Commission to continue the public hearing deprived the plaintiffs of a "fundamentally fair hearing."
 VII
The claim that the project does not comply with the Hamden Zoning Regulations:
Regulations, § 313, titled "Through Lots", provides:
 "On a through lot, front yards are required on all streets in accordance with the applicable district."
CT Page 9989 The plaintiffs claim that the subject property is a through lot which does not meet this standard. Regulations, Article II — Definitions, defines a through lot as, "A lot other than a corner lot having frontage on two streets or two frontages on the same street."
Section 718a, in pertinent part, requires that multi-family dwellings in an R-4 District shall be located on and have vehicular access only to certain enumerated streets, including Whitney Avenue.
However, at the time the State constructed the Mount Carmel Connector, it established a "no-access" strip along the Whitney Avenue boundary of the subject property, blocking access to Whitney Avenue; this circumstance motivated the then owners to seek and obtain a variance allowing access from Ives Street. The Court finds that the subject lot's frontage on Ives Street complies with the width requirements for an R-4 District (§ 433).
The plaintiffs argue that the applicant has failed to comply with the Regulations in that the frontage on Ives Street is only 85.5 feet, where § 718.b. requires a continuous frontage of 160 feet. The defendants argue that the continuous frontage requirement is as to Whitney Avenue. The requirement of § 718.b. is for "Continuous Frontage (Min.) on streets listed in [§] 718a." The plaintiffs claim that the property in question is a through lot which requires 160 feet of frontage both on Ives Street and on Whitney Avenue. Zoning regulations, as they are in derogation of common law property rights, cannot be construed to include or exclude by implication what is not clearly within their express terms, Planning Zoning Commission v. Gilbert, 208 Conn. 696, 705
(citation omitted). Whitney Avenue is listed in § 718.a. Ives Street is not listed. The application and site plan show a continuous frontage on Whitney Avenue of more than 160 feet. The variance granted the prior owners of the subject property varied the provisions of § 718.a to allow access from Ives Street but did not vary other provisions of § 718. The Court finds that the application and site plan conforms to the frontage requirement of § 718.b and that the Regulations do not require 160 feet of continuous frontage on Ives Street.
The "maximum depth of use" requirements of § 718.b require, inter alia, that, "All multi-family units shall be located within the [required] 400 foot depth." The plaintiffs claim that the maximum depth of use requirements of § 718.b must be measured from Ives Street, the access street, not from Whitney Avenue. Measured from Ives Street, many of the proposed dwelling units fall outside the 400 foot depth limit. The defendants argue, and the Court agrees, that the lot requirements of § 718.b, including maximum depth of use, are properly measured from Whitney Avenue. CT Page 9990
Having argued that the subject property is a through lot, in order support their claim that the applicant's frontage on Ives Street must match the 160 feet required on Whitney Avenue, the plaintiffs go on to claim that the subject property is a rear lot, which must comply with the rear lot requirements of § 311. The Court is not persuaded. The plaintiffs claim the lot in question is a through lot because it has frontage on Whitney Avenue. The 480 feet of frontage on Whitney Avenue serves to differentiate the subject property from a rear lot. See e.g., diagram, "Types of Lots," Regulations, following p. II-12, which the court finds is an integral part of the definition of "rear lot." The plaintiffs' interpretation would lead to difficult and bizarre results,Muller v. Town Plan Zoning Commission, 145 Conn. 325, 331. The Court finds the plaintiffs have failed to establish, by a fair preponderance of the evidence, that the property at issue is a rear lot, subject to the requirements of § 311. Assuming, arguendo the property were a rear lot, the access way "to the rear lot" (§ 311), measured from Ives Street to the rear lot line of the properties flanking said access way is less than 400 feet in length, and the frontage and other requirements of S. 311 are met.
Finally, the plaintiffs claim, but have failed to establish, that the defendant, Ravenswood, has not met the "front landscaped area" requirements of Regulations, § 763. See (Return of Record, #60).
 VIII
The claim that the applicant was required to produce evidence of "substantial differences" from "earlier plans rejected as too intense:"
This claim is without merit. It is well established that an administrative agency that has acted on a special permit is not allowed to reverse itself, unless a change of circumstances intervenes that materially affects the merits of the case, Grace Community Church v.Planning Zoning Commission, 42 Conn. Sup. 256, 270. The defendant Commission had, in 1998, approved an application substantially the same as that before us. Absent a change of circumstances, it would appear the principle cited in Grace Community, supra, would leave the Commission with little choice but to approve the application before us. Not so, assert the plaintiffs; the Commission is required to go back in time, past the 1998 approval, past the 1988 approval, to denials of applications in 1987, and the Commission must find substantial differences between the 1987 applications and the 1999 application. The plaintiffs cite no authority for the claim and the Court rejects it.
 IX CT Page 9991
The claim that site plan approval was improper:
Specifically, the plaintiffs claim the Commission erred in approving the site plan, as there was no substantial evidence in the record to show compliance with Regulations, § 844.10 Drainage; § 844.3 Traffic and Pedestrian Access; § 844.9 Neighborhood Character and § 843.2a. (4). The Court finds that the plaintiffs have failed to establish these claims.
First, § 844 lists eleven "Site Plan Objectives" (§§ 844.1 through 844.11), which are "general" objectives, to ensure the accomplishment of which the Commission "may" prescribe reasonable conditions and safeguards. The Court adopts the cogent reasoning ofLevin, J., (CV-98-0416513) on this issue and finds that the objectives listed in § 844 are general objectives of the Commission. which it may seek to accomplish by imposing conditions on an applicant. Moreover, the conditions imposed by the Commission in approving the subject application (Return of Record, #36, pp. 14) included conditions addressing the objectives of § 844.10 and § 844.3.
Further, there was substantial evidence in the record with reference to the issues of storm water runoff (Drainage) and traffic safety (Traffic and Pedestrian Access) and harmony with the character of the neighborhood, to support the Commission's decision to grant the subject permit with conditions.
With regard to § 844.9, Neighborhood Character, the Commission had the plans and testimony of the applicant's experts, the reviews and recommendations of the Town's experts, and other interested agencies, members' knowledge of the neighborhood and opponents' testimony on which it could rely in concluding that the application conformed with the site plan objectives of § 844.9. The same evidence sufficed to find that the application comported with the threshold considerations listed in § 826, including § 826.7.
In the course of the public hearing opponents testified extensively concerning traffic conditions on Ives Street and their belief that the project at issue would impermissibly overburden an already overburdened highway. The question is not whether there was substantial evidence in the record to support opponents' claims, but whether there is substantial evidence in the record to support the Commission's decision, Samperi v.Inland Wetlands Agency, supra, at 588. With regard to traffic and pedestrian access, the Commission had reports of the Town Engineer (Return of Record, #14), the Town Traffic Engineer (Return of Record, #19), the Police Department (Return of Record, #17), the Town's Fire Marshall CT Page 9992 (Return of Record #7) and traffic count data submitted by the South Central Regional Council of Governments (Return of Record #16), as well as information derived from contacts between the applicant's engineer and the State Department of Transportation ("the DOT") (Return of Record #46; Transcript, pp. 95-99). It should be noted that the Town's Traffic Engineer had no objection to the project. There was substantial evidence in the record to permit the Commission to conclude that the project was not a "high traffic generator." Ives Street (Route 22) is a state highway. The Commission had before it testimony that the DOT was considering widening the street from the project entrance to Whitney Avenue in the event the project went forward. The Commission did not delegate its responsibility to the DOT. Rather, in the reasonable expectation that the DOT would, as necessary, take measures to improve traffic conditions, it properly conditioned its approval on DOT certification. Blaker v. Planning Zoning Commission, 212 Conn. 471,482, quoting from Lurie v. Planning Zoning Commission, 160 Conn. 295,306-7.
The Court finds there was substantial evidence in the record to support the Commission's conclusion that the application met the requirements of § 844.2 and § 844.3 and comported with § 826.5. With regard to drainage, the Commission had comments of the Town Engineer, information from the applicant, including its Engineering Report (Return of Record #59), as well as submissions by the Regional Water Authority ("the RWA"), (Return of Record, #15, #20) and the Quinnipiack Valley Health District (Return of Record, #18). The members of the Commission could rely properly on their knowledge of the site, Burnham v. Planning Zoning Commission, 189 Conn. 261, 267, and on the knowledge derived from the 1998 application proceeding. There was substantial evidence in the record to support the conclusion that the Commission's decision met the objectives of § 844, including § 844.10 and § 844.3.
The RWA did not oppose the application. Although the RWA, in its letter dated June 12, 1998, incorporated by reference in its letter of August 11, 1999, expressed a preference for aboveground storm management, the Commission was not required to adopt this preference, nor to impose such a system on the applicant.
The Court finds that the subject application substantially complied with the requirements of Regulations, § 843.2 (See Return of Record, #61).
 X
The claim that the Commission, in approving the application with conditions, failed to give consideration to the concerns listed in CT Page 9993 Regulations, "§ 826 Special Permit Threshold Decision," including "2. Compliance with the Plan of Development":
The comprehensive plan of development is to be found in the zoning regulations and zoning map, Forest Construction Co. v. Planning ZoningCommission, 155 Conn. 669, 677. It refers to the existing scheme of zoning regulation and is distinguished from a "plan of conservation and development" as authorized by General Statutes, § 8-23, which is a "statement of policies, goals and standards for the physical and economic development of the municipality," a "blueprint for future development," in the words of one commentator, Fuller, Land Use Law and Practice, 2d Ed., Vol. 9, § 4.4, p. 53. Such a plan of conservation and development is merely advisory, Loh v. Town Plan Zoning Commission,161 Conn. 32, 35. Hamden has such a plan in place, titled, "Hamden Plan For Our Future, A Plan of Conservation Development 1990" ("the Plan"), and adopted January 2, 1991. In its statement of purpose (pp. 1, 2) this plan is described as a "guide," a step in the ongoing planning process," representing "considered recommendations," "a statement of broad goals and standards," "a framework for future development and conservation efforts." A copy of this plan was filed (Return of Record #62) and the parties filed supplemental memoranda, addressing issues related to said plan.
The plaintiffs contend that the applicant failed to produce substantial evidence that its proposal was in compliance with the Plan and that the Commission did not make a considered decision that the project was consistent with the plan. The plaintiffs go on to reiterate certain of their claims, notably traffic safety, previously raised. The plaintiffs have failed to establish, by a preponderance of the evidence, their claims. The Court finds that there is substantial evidence in the record. to support a conclusion that the application comported with the Plan, as it did with the Regulations.
In response to the claim that the Commission failed even to consider § 826.2, "Compliance with the Plan of Development"; first, the Commission adopted a motion to approve which included, "The application also meets the Special Permit Threshold criteria specified in Section 826"; second, the record reflects that at the public hearing an opponent, William Smalley, cited the Plan and stated his belief that the application did not comply with the Plan (Transcript, pp. 68-70). The issue was thus placed before the Commission. The plaintiffs assert that no comment from any Commissioner suggests actual consideration, much less reliance on, prior experience with the Plan." The Plan, like the Regulations, is always "before" the Commission. The members of the Commission are presumed to be familiar with the Regulations and the Plan and are not required to demonstrate that familiarity to the satisfaction CT Page 9994 of the plaintiffs. Nor are the members required to devote a fixed amount of time considering the Plan in relation to the application. The plaintiffs' claim that the Commission members. failed to consider the Plan is without merit.
 XI
The plaintiffs having failed to establish any of their claims, their appeal is dismissed and judgment may enter in favor of the defendants, Ravenswood Company, LLC and the Planning Zoning Commission of the Town of Hamden.
By the Court,
Downey, J.