Fantastic Plastic, Inc., Appellant, *v.* Zoning Board of Adjustment of the City of Pittsburgh, Appellee, and Susan Nernberg, Intervening Appellee.

Fantastic Plastic, Inc., Appellant, *v.* James P. Brown, Zoning Administrator of the City of Pittsburgh, Appellee.

Argued November 8, 1974, before Judges WILKIN-SON, JR., ROGERS and BLATT, sitting as a panel of three.

*John L. Laubach, Jr.,* with him *Frank A. McFerran, Jr.,* and *Kenney, Stevens, Clark & Semple,* for appellant.

*Eugene B. Strassburger, III,* Executive Assistant City Solicitor, with him *Mead J. Mulvihill, Jr.,* City Solicitor, for appellees.

OPINION BY JUDGE BLATT, February 21, 1975:

This case involves two appeals by Fantastic Plastic, Inc. (Fantastic) from two separate orders of the Court of Common Pleas of Allegheny County, one of which affirmed the denial of an occupancy permit by the Zon-

ing Board of Adjustment (Board) while the other sustained preliminary objections made in the court below to Fantastic's complaint in mandamus directed against the Pittsburgh Zoning Administrator (Administrator). The two appeals have been consolidated before this Court. Fantastic leased a building and accompanying real estate located in a C-4 zoning district in Pittsburgh, and, in August of 1973, an application was made to the Administrator for an occupancy permit to use the premises as a restaurant-bar-dance hall, all of which are permitted uses in a C-4 district. The Administrator approved these proposed uses but the Board, after holding a hearing on the appeal filed by neighboring residents, reversed the Administrator and revoked the zoning approval. When an appeal was subsequently taken to the Court of Common Pleas, the case was remanded by the court in an order dated December 23, 1973 because the record was incomplete, and Fantastic was instructed to file an amended Occupancy Permit Application. This was done but the amended application was then rejected by the Administrator, and an appeal was again taken to the Board which affirmed the Administrator on January 11, 1974. There followed another appeal to the Court of Common Pleas which, in an opinion and order dated April 18, 1974, affirmed the Board. The appeal from this adjudication is the first of the appeals now brought to this Court.

Our scope of review here, in a case where the lower court has taken no additional testimony on an appeal from a zoning board is limited to a determination of whether or not the Board committed an abuse of discretion or an error of law. *Clawson v. Harborcreek Zoning Hearing Board*, 9 Pa. Commonwealth Ct. 124, 304 A. 2d 184 (1973).

The dispute here centers around whether or not Fantastic's application has provided for sufficient parking spaces. Pittsburgh's zoning ordinance requires that

Fantastic provide for 40 such spaces, a number determined by a formula based on the square footage of public area within the building. The premises leased by Fantastic here contain only 19 on-site parking spaces but Fantastic has contracted with Service Sales of Pittsburgh, Inc. to lease 38 additional spaces in a nearby parking lot between the hours of 7:00 P.M. to 6:00 A.M. every night except Sunday, when the lease extends for the entire day until 6:00 A.M. Monday morning. Service Sales itself uses the parking lot in connection with its own business whose hours do not coincide with those of the lease.

Section 2605 of the zoning ordinance, which is entitled "Parking Exceptions," provides in subsection 2(c): "Use of the same parking stalls at different times, in either a minor garage or minor parking area, community garage or community parking area or major garage or major parking area in order to meet the parking requirements of two (2) or more principal uses other than dwellings may be authorized in districts other than , , S-A, ', , RP,' , , CP , , or , , AP , , by the Administrator, as prescribed in Section 2804-3." In turn, Section 2804 entitled "Automobile Parking and Off-Street Loading Exceptions" states:

"The following exceptions to the provisions to the automobile parking and off-street loading requirements of Article 26 shall be authorized by the Administrator, in the Districts indicated, under the procedure followed in securing an occupancy permit (see Section 3002) subject to.* (A) All other provisions of this ordinance unless otherwise prescribed hereunder, and (B) such other provisions as are prescribed hereunder.

. . . .

"3—Use of the same parking stalls at different times, in either a minor garage or minor parking area or community garage or community parking area or major garage or major parking area, in order to meet

the parking requirements of two (2) or more principal uses other than dwellings in any district other than , , S-A, ', , RP,' , , CP , , or , , AP.* , ,

"A—The Administrator shall determine that the normal operating hours of the uses served do not conflict.

"B—The garage or parking area shall be located as otherwise provided in this ordinance and not more than one thousand (1000) feet from uses to be served.

"C—Any such garage or parking area in an , , R , , or , , I , , district may be used to serve the parking requirements of another type of district, if the primary purpose is to provide parking space for an , , R , , or , , I , , district use as the case may be, and if located at or near the edge of said , , R , , or , , I , , district so as to discourage the penetration of the more protected district by a less protected use., and

"D—A properly drawn legal instrument shall be executed by the parties concerned for such dual use of the garage or parking area, which instrument, duly approved by the city solicitor shall be filed with the application for occupancy permit." Under the zoning ordinance, therefore, the off-street parking space requirements could clearly be met by using a parking area which is being used in connection with an entirely different principal use. The applicant, for permission to do so, however, must obtain a special exception.

In the case at hand, the lower court properly found that Fantastic's lease agreement with Service Sales, Inc. satisfies the specific criteria set out in Section 2804-3. The denial of the permit was upheld, however, on the basis that the proposed use was shown to have a substantial deleterious impact on the health, safety, morals and general welfare of the community. Specifically, the court held that the proposed "nightclub" would dramatically change the character of the increased traffic which would be substantially detrimental to the character of the community. The Administrator's authority to deny the use on those grounds was,

according to the Board, derived from the preamble to Section 2804 which incorporates by reference "all other provisions of this ordinance unless otherwise prescribed hereunder." The Board contends in its brief that the Administrator may thus deny the special exception for reasons expressed in the ordinance's purposes clause, Section 106, which establishes the lessening of congestion in the streets and the promotion of the health, safety, morals and general welfare of the community as among the objects of the ordinance.

Even if we assume arguendo, that Section 2804 effectively incorporates the purposes clause as a basis for denial of the special exception, we cannot agree that the Administrator properly exercised his authority in this case. It seems clear to us that, once an applicant for a special exception shows that the proposed use is permitted under the ordinance and presents testimony and eviden′ e which shows that the application meets the requirements for a special exception, the burden of establishing that such use would violate the health, safety and welfare of the community falls upon those who oppose the issuance of a special exception. *West Whiteland Township v. Exton Materials, Inc.*, 11 Pa. Commonwealth Ct. 474, 314 A. 2d 43 (1974). Furthermore, it must be remembered that: "The Legislature in providing for special exceptions in zoning ordinances has determined that the impact of such a use of property does not, of itself, adversely affect the public interest to any material extent in normal circumstances, so that a special exception should not be denied unless it is proved that the impact upon the public interest is greater than that which might be expected in normal circumstances. Lower Providence Township and Wood v. Ford, 3 Pa. Commonwealth Ct. 382, 283 A. 2d 731 (1971). See also, Archbishop O'Hara's Appeal, 389 Pa. 35, 131 A. 2d 587 (1957); Valley Forge Industries, Inc. Appeal, 406 Pa. 387, 177 A. 2d 450 (1962); Sibarco v.

Zoning Board of Adjustment, 15 Ches. Co. Rep. 204 (1967); Ryan, Pennsylvania Zoning, §5.2.6 (1970)." *Zoning Hearing Board v. Konyk,* 5 Pa. Commonwealth Ct. 466, 290 A. 2d 715 (1972). Not every anticipated increase in traffic will justify the refusal of a special exception. Rather, the anticipated increase in traffic must be of such a character that it bears a substantial relation to the health and safety of the community. *O'Hara's Appeal, supra.*

The lower court here emphasized that the subject premises had been previously used as a supermarket. It concluded, therefore, that the changed use to a restaurant-bar-dance hall would generate traffic of a substantially different character. The lower court's position disregards the fact, however, that a restaurant-bar-dance hall is explicitly permitted in a C-4 district, even without a special exception, and that the special exception was needed in this case only because Fantastic wishes to use Service Sales' parking area to satisfy the ordinance's parking requirements. There having been no showing that the use of that other parking area, in itself, will generate an increase in traffic of such character as to bear a substantial relation to the health and safety of the community, we must conclude that the Administrator abused his discretion in denying the permit to Fantastic.

The mandamus action was brought by Fantastic to compel the Administrator to approve revised plans which reduced the public space inside its building and consequently obviated the need for any off-site parking. Inasmuch as we hold here that the Administrator must grant the special exception and approve Fantastic's original plans, the mandamus action is consequently rendered moot.

The order of the lower court affirming the Administrator's denial of an Occupancy Permit is hereby reversed and the Administrator is instructed to grant the Permit requested.