GRACE COMMUNITY CHURCH *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF BETHEL ET AL.

SUPERIOR COURT          JUDICIAL DISTRICT OF          FILE No. 303616
                              DANBURY

Memorandum filed March 17, 1992

*Driscoll, Lane, Mannion & Driscoll,* for the plaintiff.
*Gallagher & Gallagher,* for the defendants.

FULLER, J. This is an appeal from the denial by the defendant planning and zoning commission of the town of Bethel (commission) of a special permit to construct a church building in a residential zone. The appeal addresses, among other issues, whether municipal zoning laws can exclude churches as a permitted use anywhere in the municipality and whether denial of a special permit for a church violates the state and federal constitutions. The plaintiff, Grace Community Church, has also raised these constitutional questions in a direct attack on the zoning regulations of the town of Bethel in a separate action for a declaratory judgment that was consolidated for trial with this appeal. *Grace Community Church* v. *Bethel,* Superior Court, judicial district of Danbury, Docket No. 306994S (March 17, 1992).

The plaintiff is an ecclesiastical church corporation and the owner of a 13.6 acre parcel of land on Walnut Hill Road in Bethel. The property is in a residential area and in the R-40 zone.

The plaintiff is a nondenominational church with approximately 500 members but no church building. The congregation has been using Brookfield High School on Sundays for religious services and related church activities. The plaintiff previously obtained approval from the commission on July 26, 1988, for a special permit and a related site plan for a church building on the 13.6 acre parcel of land. That approval was overturned on procedural grounds when abutting property owners brought a successful appeal to the Superior Court.

The plaintiff then submitted another application to the commission for a special permit and site plan approval substantially similar to the prior application with a slightly smaller building. While the site has frontage on both Walnut Hill Road and Weed Road, the two

proposed driveways for the site were both off Walnut Hill Road. The proposed church building contained about 19,000 square feet covering less than one-half acre of the site. The commission approved the site plan on June 26, 1990. After the plaintiff filed the second special permit application on July 10, 1990, the commission scheduled a public hearing on the application for August 14, 1990, and referred it to several town officials and agencies for their review. Their reports back to the commission were favorable and any modifications or conditions that were suggested were either of no concern to the commission, agreed to by the plaintiff or were not relevant to the grounds of the commission's decision. There was an extensive public hearing on August 14, 1990, which was continued to September 4, 1990, and September 11, 1990. There was both support for and opposition to the application. Both sides had traffic experts who had prepared reports, discussed them and answered questions. On October 9, 1990, the commission extensively discussed the application and voted to deny it on the basis of § 118-21H (3) of the zoning regulations of the town of Bethel, a general provision concerning traffic conditions. That was the only concern of the commission as reflected in the minutes of its decision-making session, and the only reasons assigned for denial of the application. The plaintiff appealed to this court within fifteen days after publication of the agency's decision as required by General Statutes § 8-8.

As the owner of the property that was the subject of the special permit application, the plaintiff is aggrieved by the denial of its application. *Winchester Woods Associates* v. *Planning & Zoning Commission,* 219 Conn. 303, 308, 592 A.2d 953 (1991); *Bossert Corporation* v. *Norwalk,* 157 Conn. 279, 285, 253 A.2d 39 (1968).

This appeal raises both constitutional and nonconstitutional claims. Issues that were raised in the appeal but not briefed by the plaintiff, such as a claim that denial of the special permit is an unconstitutional taking of the property, are considered abandoned. *Shaw* v. *Planning Commission,* 5 Conn. App. 520, 525, 500 A.2d 338 (1985). Before constitutional claims can be considered, it must be determined whether the appeal can be sustained on a nonconstitutional issue. *State* v. *Zach,* 198 Conn. 168, 177, 502 A.2d 896 (1985); *Maloney* v. *Pac,* 183 Conn. 313, 324, 439 A.2d 349 (1981).

Most of the land in the town of Bethel is in one of five single-family residence zones. Permitted uses in the single-family residence zones include, among other uses: (1) one single-family dwelling per lot; (2) certain types of home or professional offices and customary home occupations; (3) community recreation facilities, not including an amusement park or privately owned facility; (4) farming, dairy, truck or nursery gardening; (5) a public library; (6) a public recreational facility operated by a governmental unit; and (7) a family day care home. Bethel Zoning Regs. § 118-24 (A) (1980). About thirty additional uses are allowed by a special permit in residential zones. Bethel Zoning Regs. § 118-24 (B) (1980). They include the use applied for by the plaintiff, a "[c]hurch, parish hall and parish housing, including a convent or other similar residence for clergy." Churches are allowed only with a special permit in all residential zones and some commercial zones, which comprise most of the land in the town. They are not a permitted use in any zone. Other uses allowed in residential zones by special permit include clubs, community center buildings, day care or nursery schools, fire stations, kennels, libraries or museums operated by nonprofit corporations, nursing or convalescent homes, police stations, post offices, private golf, tennis or swim clubs, schools, town highway facilities and town

halls. Special permits require approval of a site plan which has numerous specific requirements. Bethel Zoning Regs. §§ 118-24 (C) and 118-34 (B) (1980). Other requirements for special permit approval are contained in § 118-21, which includes subsection (H) which provides: "Notwithstanding any other provision of this regulation, no special permit shall be approved unless the Planning and Zoning Commission shall have found that: (1) The proposed use will have no detrimental effect on present and future dwellings in the vicinity. (2) The proposed architecture, site plan and landscaping are in harmony with the character of the neighborhood. (3) No conditions will be created which will adversely affect traffic."

The commission members agreed at their meeting on October 9, 1990, that the proposed church building and site plan complied with subsections (H) (1) and (2) of § 118-21, namely, that the proposed use did not have a detrimental effect on the neighborhood, and the proposed design of the building and site were consistent with the character of the neighborhood. Their concern, and the reason for denial, was based on traffic conditions and interpretation of subsection (H) (3) of § 118-21 of the zoning regulations.

When a land use agency, such as a zoning commission, acts upon a special permit, it is required to give reasons for its action. General Statutes § 8-3c. When reasons are given, the Superior Court on appeal determines whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations that the agency is required to apply under the zoning regulations. *Housatonic Terminal Corporation* v. *Planning & Zoning Board,* 168 Conn. 304, 305, 306, 362 A.2d 1375 (1975); *DeMaria* v. *Planning & Zoning Commission,* 159 Conn. 534, 541, 271 A.2d 105 (1970); *Daughters of St. Paul, Inc.* v. *Zoning Board of Appeals,* 17 Conn. App. 53, 56, 549 A.2d

1076 (1988). Where the commission gives reasons for its action, the court does not go behind the official collective statement of the commission to find other reasons that might have influenced some or all of the members of the commission to reach a final collective decision. *DeMaria* v. *Planning & Zoning Commission,* supra, 541. Where a special permit is denied, it is sufficient if any one of the reasons given supports the agency's action. *Housatonic Terminal Corporation* v. *Planning & Zoning Board,* supra, 306. Where none of the assigned reasons is valid, the court can sustain the appeal and order the special permit granted; *DeMaria* v. *Planning & Zoning Commission,* supra, 541, 542; at least where there is no other apparent problem of noncompliance with the zoning regulations.

When acting upon a special permit, a zoning commission acts in an administrative capacity. *Sheridan* v. *Planning Board,* 159 Conn. 1, 16, 266 A.2d 396 (1970). The commission should determine whether (1) the proposed use of the property is expressly permitted under the zoning regulations; *Weigel* v. *Planning & Zoning Commission,* 160 Conn. 229, 246, 278 A.2d 766 (1971); (2) whether the standards in the relevant zoning regulations are satisfied; *Farina* v. *Zoning Board of Appeals,* 157 Conn. 420, 422, 254 A.2d 492 (1969); and (3) whether conditions necessary to protect public health, safety, convenience and property values, as provided by General Statutes § 8-2, can be established. *Housatonic Terminal Corporation* v. *Planning & Zoning Board,* supra, 307.

A church is allowed in a residential zone with a special permit, and the commission did not find noncompliance with any specific standards in the zoning regulations. The commission did not resolve conditions for traffic control devices that would prevent traffic problems, although it discussed them, because a majority of the commission thought the special permit

should be denied for noncompliance with the general regulation concerning traffic conditions. There was a difference of opinion between the commission members themselves, and between the parties to this appeal, as to the meaning and application of § 118-21 (H) (3).

If a special permit application conforms with the standards in the statutes and the agency's existing regulations, it must be approved. *A.P. & W. Holding Corporation* v. *Planning & Zoning Board,* 167 Conn. 182, 185, 355 A.2d 91 (1974); *Daughters of St. Paul, Inc.* v. *Zoning Board of Appeals,* supra. The commission cannot require the applicant to meet conditions not contained in the regulations themselves. *DeMaria* v. *Planning & Zoning Commission,* supra, 540–41; *Powers* v. *Common Council,* 154 Conn. 156, 160, 222 A.2d 337 (1966). A special permit can be denied only for failure to meet specific standards in the regulations, and not for vague, general reasons. *DeMaria* v. *Planning & Zoning Commission,* supra, 541; see also *Kosinski* v. *Lawlor,* 177 Conn. 420, 423, 418 A.2d 66 (1979).

On appeal, the court reviews the record before the agency and determines whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations that the commission is required to apply under the zoning regulations. *Housatonic Terminal Corporation* v. *Planning & Zoning Board,* supra, 306; *Holt-Lock, Inc.* v. *Zoning & Planning Commission,* 161 Conn. 182, 190, 286 A.2d 299 (1971); *Spectrum of Connecticut, Inc.* v. *Planning & Zoning Commission,* 13 Conn. App. 159, 163, 535 A.2d 382, cert. denied, 207 Conn. 804, 540 A.2d 373 (1988). "The settled standard of review of questions of fact determined by a zoning authority is that a court may not substitute its judgment for that of the zoning authority as long as it reflects an honest judgment reasonably exercised." *Oakwood Development Corporation* v. *Zoning Board of Appeals,* 20 Conn. App. 458, 460,

567 A.2d 1260, cert. denied, 215 Conn. 808, 576 A.2d 588 (1990). Facts supporting the agency's decision also include knowledge acquired by commission members through personal observation of the site, or through personal knowledge of the area involved in the application. Id. Credibility of witnesses is also within the discretion of the commission. *Spectrum of Connecticut, Inc.* v. *Planning & Zoning Commission,* supra. Despite deference to the agency on factual issues and findings, " 'a court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty . . . .' " *Daughters of St. Paul, Inc.* v. *Zoning Board of Appeals,* supra, 57, quoting *Suffield Heights Corporation* v. *Town Planning Commission,* 144 Conn. 425, 428, 133 A.2d 612 (1957). Particularly close scrutiny is required here since the commission's action indirectly implicates freedom of religion under the state and federal constitutions. The commission's inability to reconcile the conflicting traffic reports and to agree on the proper interpretation of the regulation also requires some consideration of the credible evidence before the commission on the issue of traffic.

General Statutes § 8-2, the zoning enabling statute, provides in part that zoning regulations "shall be designed to lessen congestion in the streets." Accordingly, the consideration that applies to zoning applications is not the overall volume of traffic, but whether the increase in traffic will cause congestion. *Lathrop* v. *Planning & Zoning Commission,* 164 Conn. 215, 222, 319 A.2d 376 (1973); see also *Daughters of St. Paul, Inc.* v. *Zoning Board of Appeals,* supra, 69. In addition, a land use agency cannot deny an application for a permitted use because of off-site traffic considerations. *TLC Development, Inc.* v. *Planning & Zoning Commission,* 215 Conn. 527, 532, 533, 577 A.2d 288 (1990) (site plan); *Sowin Associates* v. *Planning & Zoning Commis-*

*sion of South Windsor,* 23 Conn. App. 370, 374, 375, 580 A.2d 91, cert. denied, 216 Conn. 832, 583 A.2d 131 (1991) (subdivision); see also *Beit Havurah* v. *Zoning Board of Appeals,* 177 Conn. 440, 443, 418 A.2d 82 (1979), indicating that designation of property as a permitted use establishes a conclusive presumption that it does not adversely affect the district, which precludes further inquiry into the effect of development of the site upon traffic. Arguably, a different standard applies to special permits, since they are not permitted uses. They are uses that are allowed only under conditions specified in the zoning regulations. While this issue has not been settled under Connecticut law, and does not have to be resolved to decide the present case, decisions from other states recognize that any development causes some increased traffic, and conclude that in order to deny a special permit because of traffic, a project must cause traffic congestion and have a greater impact on the area than other permitted uses for the same property not requiring a special permit. *Miller* v. *Kiwanis Club of Lock Haven, Inc.,* 29 Md. App. 285, 347 A.2d 572 (1975); *Gowl* v. *Atlantic Richfield Co.,* 27 Md. App. 410, 341 A.2d 832 (1975); *Hobbs* v. *Albanese,* 70 App. Div. 2d 1049, 417 N.Y.S.2d 556 (1979); *Fantastic Plastic, Inc.* v. *Zoning Board of Adjustment,* 16 Pa. Commw. 455, 332 A.2d 577 (1975); see also *Cape Ann Land Development Corporation* v. *City Council of Gloucester,* 374 Mass. 825, 373 N.E.2d 218 (1978). Some of the permitted uses in the R-40 zone arguably have an equal or greater impact upon traffic than construction of a church.

The commission did not expressly make a finding of traffic congestion, although it was bothered by the conflicting conclusions in the two 1990 traffic studies and attempted to reconcile them. The conflicting opinions should not have been surprising, and are reminiscent of another case where the court noted: "Most of the

oral testimony before the commission consisted of glowing statements by the proponents' attorneys on the advantages to the community of the project, while the attorneys for the opponents painted a gloomy picture of the effect upon the neighborhood if the gargantuan plans received approbation. Each side produced experts, or reports by experts, in the fields of traffic control and town planning. Their opinions favored the view of their employers." *Whalen* v. *Town Plan & Zoning Commission,* 146 Conn. 321, 325–26, 150 A.2d 312 (1959). While the zoning regulations do not require a traffic study to be submitted with a special permit application, the plaintiff retained a traffic expert who prepared a report for both the 1988 and 1990 submissions. The opponents, mostly neighboring property owners, hired their own traffic expert who had the benefit of reviewing both of the proponents' reports, and used some of their data in critiquing them. While the opinions on the effect of additional traffic vary, the reports show basic agreement on road configuration, existing traffic volumes and accident statistics.

Access to the site is off Walnut Hill Road, a substantial distance from the intersection of Weed Road to the west and Old Hawleyville Road to the east. The sight distances from the proposed entrance on Walnut Hill road are about 620 feet to the west and 450 feet to the east, well in excess of the minimum sight distance of 200 feet for a road with a posted speed limit of twenty-five miles per hour. If the church is built, the Sunday peak hour for traffic will be between noon and 1 p.m. The present traffic volume in both directions on Walnut Hill Road for the peak hour is sixty-nine vehicles. Vehicle traffic for Weed Road and Old Hawleyville Road at their intersections with Walnut Hill Road are forty and 515 vehicles per hour respectively. With a projected attendance at church services of 508 persons, the site would generate 245 vehicle trips on Walnut Hill

Road during the peak hour, with fifteen vehicles entering and 230 vehicles leaving the property. The applicant's report projected that 220 of the 230 vehicles leaving the site would go easterly on Walnut Hill Road to the Old Hawleyville Road intersection. There is a stop sign on Walnut Hill Road at the Old Hawleyville Road intersection, but no traffic control device on Old Hawleyville Road. It was projected that 150 of the 220 vehicles would make a left turn on Old Hawleyville Road and proceed to a traffic light at Newtown Road (Route 6). The other ten cars leaving the site would proceed westerly on Walnut Hill Road to the Weed Road intersection. There is no traffic control device on Walnut Hill Road but there is a stop sign on Weed Road. Both reports were in agreement that the present level of service in both directions on Walnut Hill Road is either service level A or B and that the additional traffic from the church site that turned westerly on Walnut Hill Road to Weed Road would not significantly change those levels.

Levels of service are rated A through F by traffic engineers, and are used to describe traffic flow conditions. The capacity of a roadway or intersection is defined as "the maximum rate of vehicles which have a reasonable expectation of passing a given section of a lane or roadway during a given time period under prevailing roadway and traffic conditions." Prevailing conditions take into account physical operating conditions and traffic characteristics including roadway alignment, number and width of lanes, direction of traffic, traffic control devices and other factors. Vehicle capacity determines the ability of a roadway or intersection to accommodate traffic under various levels of service. The levels of service are a measure of factors that influence the amount of traffic congestion, including speed and travel time, traffic interruption, safety and delays. Service level A is the best condition. Ser-

vice level F is characterized by volumes greater than the roadway capacity as complete congestion occurs, and is considered unacceptable for the operation of traffic. Service level E is defined as the actual capacity of the roadway and involves delay to all motorists due to congestion; it is considered to be the limit of acceptable delay, with delays of forty to sixty seconds per vehicle. Service level F involves delays of over sixty seconds. A level of service for unsignalized intersections is stated in terms of reserve or unused capacity of the approach lane in question, measured in additional vehicles per hour.

There was a significant difference of opinion on the level of service at the Walnut Hill Road intersection with Old Hawleyville Road resulting from an additional 220 vehicles during the peak hour. The applicant's report anticipated a service level between A and C while the opponents' report anticipated service level F because of cars making a left turn at the intersection onto Old Hawleyville Road. A related consideration was that there had been thirty accidents at the intersection in a five and one-half year period.

Walnut Hill Road is generally twenty to twenty-one feet in width, and there were only two accidents in five and one-half years at the Weed Road intersection with Walnut Hill Road. The applicant's traffic study did not address service levels at that intersection, although it should have been obvious to the commission that with the small number of vehicles involved it would be service level A. The opponents' report argued that a higher percentage of cars leaving the site would proceed westerly on Walnut Hill Road to that intersection and then proceed northerly on Weed Road to Route 6. The report did not indicate whether going the opposite direction on Walnut Hill Road would improve the service level at the Old Hawleyville Road intersection. The

opponents' report also questioned the adequacy of the sight distances and the width of the roadways near the site.

The minutes of the commission's discussion of the conflicting traffic reports shows concern and confusion on its part regarding whether there was adequate compliance with the regulation. While there was some discussion about changes in traffic control devices at the Walnut Hill Road and Old Hawleyville Road intersection, the commission was uncertain whether it could act because it did not have direct control over such changes. In fact, the commission could have approved the special permit conditional upon a modification of traffic control devices at the intersection. *Lurie* v. *Planning & Zoning Commission,* 160 Conn. 295, 307, 278 A.2d 799 (1971) (conditional approval of special permit was valid where applicant would pay for offsite improvements and initial approval was obtained from state highway department).

The plaintiff claims that the general, vague standard relied upon by the commission was inadequate to prevent approval of the special permit. Subsection 118-21 (H) (3) requires the commission to find that "[n]o conditions will be created which will adversely affect traffic." Several concepts support the plaintiff's position. Zoning regulations, which are in derogation of common law property rights, should not be construed to include or to exclude by implication matters that are not clearly within their expressed terms. *Planning & Zoning Commission* v. *Gilbert,* 208 Conn. 696, 705, 546 A.2d 823 (1988). While the interpretation of a zoning regulation by a land use agency is entitled to some deference, the interpretation of provisions in the ordinance is a question of law for the court. *Danseyar* v. *Zoning Board of Appeals,* 164 Conn. 325, 327, 321 A.2d 474 (1973); *Thorne* v. *Zoning Board of Appeals,* 156 Conn. 619, 620, 238 A.2d 400 (1968). The proper con-

sideration for traffic in a zoning context is not whether the use increases traffic volume, but whether it causes a traffic hazard or traffic congestion. *Lathrop* v. *Planning & Zoning Commission,* supra, 222. The regulation, however, does not refer to traffic congestion and it is apparent from the discussion on the application that the commission was uncertain exactly what it had to consider to determine whether the project conformed with the regulation. Some commission members had the impression that any change in the level of service, even short of level F, violated the regulation. Other discussion focused on road and sight line distances at locations not near the site and on highways other than Walnut Hill Road. A municipality has a legal duty to maintain its highways in a reasonably safe condition for public travel; *Stamford Dock & Realty Corporation,* v. *Stamford,* 124 Conn. 341, 344, 200 A. 343 (1938); and cannot deny access to a public highway on the excuse that it has not adequately maintained its roads.

Part of the commission's problem in applying the regulation resulted from the vagueness of the regulation itself. Administrative regulations must have adequate, fixed and sufficient standards to guide the agency in their application to avoid decisions that allow the agency to interpret the regulations in more than one manner and to apply them arbitrarily. *Ghent* v. *Planning Commission,* 219 Conn. 511, 517, 594 A.2d 5 (1991); *Sonn* v. *Planning Commission,* 172 Conn. 156, 162, 374 A.2d 159 (1976). A property owner cannot be required to offer sufficient proof as the agency may require to allow use of property where the agency's view is not guided by fixed standards. *Helbig* v. *Zoning Commission,* 185 Conn. 294, 310, 440 A.2d 940 (1981). What will "adversely affect" traffic is a vague and imprecise concept susceptible of several interpretations. The plaintiff claims that the only reasonable construction of the regulation is that the application

cannot be denied on that basis unless a specially permitted use generates traffic that will have a greater adverse impact than permitted uses in the zone, and the traffic generated by the site will endanger public safety. "The designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." *Beit Havurah* v. *Zoning Board of Appeals,* supra, 443. Some of the permitted uses in a residential zone, such as a community recreation facility, public park and public playground, may generate as much concentrated traffic as a church and with the same potential effect. The effect of permitted uses upon adjacent roadways, while not controlling, provides some guidelines as to traffic volume and concentration required to adversely affect traffic in the vicinity of the site.

In the final analysis, despite the conflicting evidence and uncertainty as to the meaning of the regulation, the commission voted down the application by only a four to three vote. In addition, it had previously approved virtually the same application in 1988, although that approval was appealed and reversed on a procedural ground (*Hehl* v. *Bethel Planning & Zoning Commission,* Superior Court, judicial district of Danbury, Docket No. 295893S [July 18, 1990], appeal sustained for receipt of evidence after public hearing).

There is a well established concept in the administrative law of this state that prohibits an administrative agency from reversing its prior decision unless the facts and circumstances that resulted in the decision have sufficiently changed to affect materially the reason that produced and supported the decision and no vested

rights have intervened. *Laurel Beach Assn.* v. *Zoning Board of Appeals,* 166 Conn. 385, 387, 349 A.2d 834 (1974); *Hoffman* v. *Kelly,* 138 Conn. 614, 616–17, 88 A.2d 382 (1952); *St. Patrick's Church Corporation* v. *Daniels,* 113 Conn. 132, 139, 140, 154 A. 343 (1931); *Carlson* v. *Fischer,* 18 Conn. App. 488, 497, 558 A.2d 1029 (1989); *Root* v. *Zoning Board of Appeals of Madison,* 41 Conn. Sup. 218, 220–21, 565 A.2d 14 (1989).

An administrative agency that has acted on a special permit application is not allowed to reverse itself unless a change of circumstances intervenes that materially affects the merits of the case, except that it can grant a second application that has been substantially changed to meet the objections the agency had to the original application. *Rocchi* v. *Zoning Board of Appeals,* 157 Conn. 106, 111, 248 A.2d 922 (1968); *Mitchell Land Co.* v. *Planning & Zoning Board of Appeals,* 140 Conn. 527, 534–35, 102 A.2d 316 (1953). The decisions on this concept have involved disapproval of an initial application and submission of a second one that is then approved, but the concept should also apply where an initial approval that is not implemented is then taken away on a second application.

There is no evidence of changed conditions from the time of the prior approval. While the opponents retained a traffic engineer to oppose the application, his report relied primarily upon the data of the proponent's traffic expert from both the 1988 and 1990 applications, even though the two experts reached different conclusions. For material changes to exist since the prior application, there should be some evidence of changed conditions in the immediate vicinity of the subject property connected with the reason for disapproval of the second application. See *Burr* v. *Rago,* 120 Conn. 287, 293, 180 A. 444 (1935). There is no evidence of changed traffic conditions in the area between July, 1988, and October, 1990, or any other land develop-

ment activities that would significantly increase the traffic volume or cause traffic congestion on the roads near the project. In addition, while there may be some question or debate over traffic conditions, the commission did not clearly make a mistake by its July, 1988, approval of the project. The town officials and agencies to which the applications were referred had no significant problems with either application. In the absence of factual findings by the commission as to how the application was different from the previous one, it should not have denied the special permit. See *Anastasi* v. *Zoning Commission,* 163 Conn. 187, 189, 190, 302 A.2d 258 (1972). This is particularly true where the applicant was willing to consider reasonable controls and improvements to prevent traffic problems. While all of the considerations previously discussed show that the one reason assigned by the commission for denying the application was inadequate and that it abused its discretion in denying the special permit, the present case presents another critical factor that requires reversal of the decision and approval of the special permit.

The plaintiff contends in both the present case and in the declaratory judgment action that special standards apply because the right to the free exercise of religion is involved, and that the zoning regulations are unconstitutional and violate several provisions of the federal and state constitutions. The right to raise such claims in a land use appeal is limited. As the defendants claim, Connecticut adheres to a rule that a party who makes an application under a zoning or other land use ordinance is precluded in the same proceeding from raising the question of its constitutionality. *Bierman* v. *Planning & Zoning Commission,* 185 Conn. 135, 139, 440 A.2d 882 (1981); *J & M Realty Co.* v. *Norwalk,* 156 Conn. 185, 191, 239 A.2d 534 (1968); *St. John's Roman Catholic Church Corporation* v. *Darien,* 149 Conn. 712, 717, 184 A.2d 42 (1962). Constitutional questions can

be raised in a separate declaratory judgment proceeding. *Cioffoletti* v. *Planning & Zoning Commission,* 209 Conn. 544, 563, 552 A.2d 796 (1989); *Bierman* v. *Planning & Zoning Commission,* supra, 140; *St. John's Roman Catholic Church Corporation* v. *Darien,* supra. This prevents a broad constitutional attack on the Bethel zoning regulations in this appeal, even though churches are not a permitted use in any zone in the town. There is an exception to this rule, however, that allows an unsuccessful applicant to raise the constitutionality of a regulation in an administrative appeal as applied only to its own property under the facts of the case. *Bierman* v. *Planning & Zoning Commission,* supra; *J & M Realty Co.* v. *Norwalk,* supra, 191 n.2; *DeForest & Hochkiss Co.* v. *Planning & Zoning Commission,* 152 Conn. 262, 269, 205 A.2d 774 (1964).

Several cases in this state have involved the application of zoning regulations to churches. *West Hartford Methodist Church* v. *Zoning Board of Appeals,* 143 Conn. 263, 121 A.2d 640 (1956), held that a zoning board of appeals did not abuse its discretion by denying a special exception for a church in a residential zone where the proposed location would adversely affect the area because of an increase in traffic that would cause a substantial loss in value of nearby residential properties. The court noted that the plaintiff had withdrawn its claim that the provision of the zoning regulations forbidding the use of property within certain zones unless a special exception was obtained from the board was unconstitutional, and limited the decision to whether the church met the regulations. Id., 266. In *St. John's Roman Catholic Church Corporation* v. *Darien,* supra, 720, it was recognized that even though churches may not be completely excluded from residential zones, they can be subject to reasonable regulation as to their location without violating the constitutional guarantee of freedom of religion. This is the majority

rule. See 2 R. Anderson, American Law of Zoning (3d Ed. 1986) § 12.22. While not deciding the question here, both cases recognized that even if they cannot be wholly excluded from a town, churches and church schools may be subject to reasonable zoning regulations and require a special permit. In a subsequent case, *Beit Havurah* v. *Zoning Board of Appeals,* supra, 448, the court took a broad view as to the type of activities that are allowed as accessory uses to a church. More recently, in *Daughters of St. Paul, Inc.* v. *Zoning Board of Appeals,* supra, 53, the Appellate Court upheld the trial court's reversal of the denial of a special exception (special permit) for construction of a convent and religious book store. While not deciding the case on constitutional grounds, the court recognized that the free exercise of religion clauses in the constitution of Connecticut, article first, § 3, and in the first amendment to the United States constitution require more protection for churches than other uses of property, and that zoning regulations should not be strictly enforced against religious uses. Id., 67, 68. None of the Connecticut cases, however, resolves to what extent the state and federal constitutional provisions preclude or limit zoning regulations on churches and church activities.

Cases from other states have held that it is illegal for a municipality to exclude churches in all zones, from all residential zones, to allow them in the municipality only with a special permit, or have held that there was no compelling reason to deny a special permit. *Islamic Center of Mississippi* v. *Starkville,* 840 F.2d 293 (5th Cir. 1988) (church allowed only with special permit in zone, even though permitted use in another residential zone); *Englewood* v. *Apostolic Christian Church,* 146 Col. 374, 362 P.2d 172 (1961) (church allowed only with special permit); *Rogers* v. *Mayor & Aldermen of Atlanta,* 100 Ga. App. 114, 137 S.E.2d 668 (1964) (church allowed only with special permit in residential

zone); *Church of Christ* v. *Metropolitan Board of Zoning Appeals,* 175 Ind. App. 346, 371 N.E.2d 1331 (1978); *Mooney* v. *Orchard Lake,* 333 Mich. 389, 53 N.W.2d 308 (1952); *Congregational Temple Israel* v. *Creve Coeur,* 320 S.W.2d 451, 456 (Mo. 1959) (exclusion from residential zones); *Jehovah's Witnesses Assembly Hall* v. *Woolwich Township,* 220 N.J. Super. 381, 532 A.2d 276 (1987); *Bhahi* v. *Deal Borough Commissioners,* 204 N.J. Super. 575, 499 A.2d 559 (1985); *Diocese of Rochester* v. *Planning Board,* 1 N.Y.2d 508, 522, 136 N.E.2d 827 (1956) (churches cannot be excluded from residential district); *North Shore Unitarian Society* v. *Village of Plandome,* 200 Misc. 524, 109 N.Y.S.2d 803 (1951); *State ex rel. Synod of Ohio of United Lutheran Church* v. *Joseph,* 139 Ohio St. 229, 39 N.E.2d 515 (1942) (church allowed in residential district only with special permit); *Congregation Committee, North Fort Worth Congregation of Jehovah's Witnesses* v. *Haltom City,* 287 S.W.2d 700 (Tex. Civ. App. 1956); *State ex rel. Wenatchee Congregation of Jehovah's Witnesses* v. *Wenatchee,* 50 Wash. 2d 378, 312 P.2d 195 (1957) (special permit required for church in residential zone); see also *Love Church* v. *Evanston,* 671 F. Sup. 515 (N.D. Ill. 1986), rev'd on other grounds, 896 F.2d 1082 (7th Cir. 1990); 2 R. Anderson, supra; 82 Am. Jur. 2d 639, Zoning and Planning § 154; annot., 74 A.L.R.2d 377.

These cases are based on the concept that such zoning restrictions must yield to the right of freedom of religion protected by the first and fourteenth amendments to the United States constitution and comparable provisions in state constitutions where the zoning regulations unreasonably hinder or restrict religious activities. Constitutional provisions do not prevent all governmental regulation of churches and religious organizations, and they may be subject to religiously neutral regulation for a secular governmental purpose

under the police power, such as, fire inspection and building and zoning regulations. *Wisconsin* v. *Yoder*, 406 U.S. 205, 214, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972); *Lemon* v. *Kurtzman*, 403 U.S. 602, 612–14, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971); *St. John's Roman Catholic Church Corporation* v. *Darien*, supra, 720, 723; *Church of Christ in Indianapolis* v. *Metropolitan Board of Zoning Appeals*, supra, 351; *Islamic Center of Mississippi* v. *Starkville*, supra, 299. The first amendment to the United States constitution limits the enactment of any law "respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." Article first, § 3, of the constitution of Connecticut has a comparable provision. The constitution of Connecticut, article first, § 20, guarantees equal protection of the laws and provides that no person shall be discriminated against in the exercise of his or her rights because of religion. The effect of these provisions on the plaintiff's property and the extent to which they override zoning regulations based upon the police power are beyond the scope of and unnecessary to decide this appeal.

Article seventh of the constitution of Connecticut does have a provision that more specifically bears on the issue involved here, the right to build a church building on property owned by a church or ecclesiastical society. Article seventh provides in part that any religious society "may build and repair houses for public worship." Provisions of the state constitution may be construed to provide greater protection of rights than the federal constitution gives. *Husti* v. *Zuckerman Property Enterprises, Ltd.*, 199 Conn. 575, 589, 508 A.2d 735, appeal dismissed, 479 U.S. 802, 107 S. Ct. 43, 93 L. Ed. 2d 373 (1986). The provision in article seventh, giving religious societies the right to build churches, has not been construed in Connecticut cases including *St. John's Roman Catholic Church Corporation* v.

*Darien,* supra, 720, where it was indicated that churches and church schools may be subject to reasonable regulations through zoning regarding their location without violating the constitutional guarantee of freedom of religion. Since this is an administrative appeal, it is not the proper action to decide whether article seventh creates a paramount right of a church society to build a church building without regard to reasonable restrictions in the muncipality's zoning regulations or significant traffic safety and congestion problems caused by its construction. Moreover, the plaintiff has conceded that the constitutional provisions protecting freedom of religion do not give the absolute right to a religious organization to construct a church building wherever it wants and in disregard of reasonable land use regulations based on the police power.

The Supreme Court in *Burns* v. *Barrett,* 212 Conn. 176, 187, 561 A.2d 1378 (1989), quoting *Cox* v. *New Hampshire,* 312 U.S. 569, 574, 61 S. Ct. 762, 85 L. Ed. 104 (1941), stated that " 'a restriction of the use of highways . . . to promote the public convenience in the interest of all' " is not prevented by the attempted exercise of first amendment rights which in other circumstances would be entitled to protection. See also *Husti* v. *Zuckerman Property Enterprises, Ltd.,* supra; *Cologne* v. *Westfarms Associates,* 192 Conn. 48, 469 A.2d 1201 (1984). Some increased traffic from construction of a church, however, is not a sufficiently significant factor to warrant limitation of freedom of religion by denial of a special permit. *Family Christian Fellowship* v. *County of Winnebago,* 151 Ill. App. 616, 503 N.E.2d 367 (1986); *State ex rel. Wenatchee Congregation of Jehovah's Witnesses* v. *Wenatchee,* supra, 385–86; *Congregation Committee, North Fort Worth Congregation, Jehovah's Witnesses* v. *Haltom City,* supra, 705; 82 Am. Jur. 2d 639–41, supra. In short, where there is a conflict between

constitutional rights and land use regulations under the police power, the outcome depends upon the facts of each case. This type of problem frequently arises when land use regulations as applied to a specific property amount to an unconstitutional taking of it under the state and federal constitutions. See *Bartlett* v. *Zoning Commission,* 161 Conn. 24, 31, 282 A.2d 907 (1971). "[A] litigant may challenge the validity of a statute or ordinance under the Connecticut constitution only as it has been applied to him." *Husti* v. *Zuckerman Property Enterprises, Ltd.,* supra, 589. Under the facts of the present case, the plaintiff was entitled to a special permit on nonconstitutional grounds. Even if those factors were insufficient to overturn the commission's denial of the special permit, however, under the facts of the present case and considering the specific and apparently unique language of article seventh of the constitution of Connecticut, denial of the special permit to build the church here would be illegal, and the provision in the zoning regulations would be unconstitutional as applied to the plaintiff's property.

Even though the commission must grant a special permit to the plaintiff, it has the right to attach reasonable conditions necessary to protect the public health, safety, convenience and property values, as provided by General Statutes § 8-2. *Housatonic Terminal Corporation* v. *Planning & Zoning Board,* supra, 307; *Summ* v. *Zoning Commission,* 150 Conn. 79, 91, 186 A.2d 160 (1962). The commission's authority to impose reasonable conditions is not a standard allowing it to tack on any condition it wants, but merely the conditions allowed by the statute and the regulations. Reasonable and necessary conditions within the control of the applicant to alleviate traffic congestion in the vicinity of the site can be attached to a special permit. *Lurie* v. *Planning & Zoning Commission,* supra, 299, 307; Bethel Zoning Regs. § 118-21 (I) (1980).

The appeal is sustained and remanded to the commission for proceedings consistent with this decision. General Statutes § 8-8 (1).