[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Edward Zandri, Matty Management Co., Mario Del Monaco, Antonietta Del Monaco, and Alcino Diniz, appeal from the decision of the Planning and Zoning Commission denying their petition for a zone change and amendment to the Comprehensive Town Plan.
The plaintiffs are the owners of four separate but contiguous parcels of land located on Route 35 ("Danbury Road") in Ridgefield, Connecticut ("the property"). On October 16, 1995, the plaintiffs filed a petition to change the zone of the property from RAA (two acre residential) to DPD (Design Professional District). The plaintiffs also asked for an amendment to the Comprehensive Town Plan ("Town Plan") to reflect the zone change.[1] The plaintiffs stated that the use of the property as currently zoned was no longer appropriate given the traffic on Danbury Road as well as the development and the use of surrounding properties.
A public meeting of the Planning and Zoning Commission of the Town of Ridgefield ("the Commission") was scheduled for December 19, 1995, but cancelled due to inclement weather. The hearing was rescheduled and held on January 9, 1996. A second hearing was held on February 27, 1996. On March 5, 1996, the Commission voted (9-0) to deny the petition to rezone and the proposed amendment to the Town Plan; it adopted a memorandum of decision on March 12, 1996. Notice of the denial was filed with the town clerk and CT Page 3026 mailed to the plaintiffs on March 14, 1996. The notice was published in the Ridgefield Press on March 21, 1996. The plaintiffs filed this appeal on April 9, 1996.
General Statutes § 8-8 provides that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located." General Statutes § 8-8 (b). "Board" includes a municipal zoning commission. General Statutes §8-8 (a)(2). "[A] statutory right of appeal from a decision of an administrative agency may be taken advantage of only by strict compliance with the statutory provisions by which it is created."Simko v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988).
An owner of the subject property is aggrieved and entitled to bring an appeal. Winchester Woods Associates v. Planning ZoningCommission, 219 Conn. 303, 308, 592 A.2d 953 (1991). A party must both allege and prove aggrievement. Jolly, Inc. v. Zoning Boardof Appeals, 237 Conn. 184, 192, 676 A.2d 831 (1996).
The plaintiffs have alleged that they are aggrieved parties because their petition was denied and they are owners of the subject property of the decision. The plaintiffs have submitted a certificate of devise, warranty and other deeds related to the subject property. The plaintiffs were found by this court on November 7, 1996 to be aggrieved parties in this case.
"The appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published . . . ." General Statutes § 8-8 (b). Service must be made on the chairman or clerk of the board and on the clerk of the municipality. General Statutes § 8-8 (e). The Commission's decision was published on March 21, 1996. The plaintiffs served this appeal on the town clerk of Ridgefield and Nelson Gelfman, Chairman of the Commission, on April 4, 1996. Thus, service was made within the fifteen day time limit set by General Statutes § 8-8.
"In traditional zoning appeals, the scope of judicial review depends on whether the zoning commission has acted in its legislative or administrative capacity. The discretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an administrative board." (Internal quotation marks omitted.) Kaufman v. ZoningCT Page 3027Commission, 232 Conn. 122, 150, 653 A.2d 798 (1995). "Acting in such legislative capacity, the local [zoning] board is free to amend [or to refuse to amend] its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for [or the undesirability of] a change." (Alteration in original.) Id. See also Protect Hamden/North Haven v. Planning Zoning Commission,220 Conn. 527, 543, 600 A.2d 757 (1991).
"Appeals from legislative zoning decisions require a showing that the commission has acted arbitrarily . . . illegally . . . or in abuse of discretion. . . . Legislative decisions reached by [a zoning] commission must be upheld by the trial court if they are reasonably supported by the record." (Citations omitted; internal quotation marks omitted.) Kaufman v. Zoning Commission,
supra, 232 Conn. 151. "Where a zoning [commission] has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Internal quotation marks omitted.) West Hartford InterfaithCoalition v. Town Council, 228 Conn. 498, 513, 636 A.2d 1342
(1994). "The action of the commission should be sustained if even one of the stated reasons is sufficient to support it." Burnhamv. Planning Zoning Commission, 189 Conn. 261, 265, 455 A.2d 339
(1983).
In its decision, the Commission gave specific reasons for the denial of the petition to rezone. First, the Commission found that the proposed zone designation was inconsistent with the proposed land use map that is part of the Town Plan. Second, the Commission concluded that while the present designation is not likely to generate additional traffic that would adversely affect the neighborhood, rezoning the property would lead to substantial traffic which would add to an overburdened road system and infrastructure inconsistent with the safety and welfare of the area.
With regard to the proposed amendment to the Town Plan, the Commission gave the following reasons. First, the Commission determined that the redesignation of the property would alter the general character of the area and have a detrimental impact in that: (a) it would create substantial additional traffic that would exacerbate poor traffic conditions on Danbury Road, negatively impacting public health, safety and welfare; and (b) CT Page 3028 it would prompt long-term neighborhood instability and trigger a "domino effect" that would lead to further requests to rezone residential properties to more intensive uses. Second, the Commission emphasized that, based on previous examinations, it had consistently concluded that the northern boundary for non-residential development should be where Ridgefield Brook crosses Danbury Road, and that the plaintiffs' petition was "contrary to that concept."
The plaintiffs appeal on the ground that the denial was illegal, arbitrary and an abuse of discretion. With respect to the petition to rezone, they allege that traffic conditions do not warrant the RAA designation. The plaintiffs further allege that the Commission misapplied and misunderstood the DPD zone. Finally, the plaintiffs allege that the Commission's decision is not supported by the record.
Concerning the petition to amend the Town Plan, the plaintiffs again allege that traffic conditions do not warrant the RAA designation and that the decision is not supported by the record. The plaintiffs also allege that the Commission's decision was based, in part, on a concern with the "domino effect," despite the fact that Commission decisions have no precedential effect. Finally, the plaintiffs allege that the Commission erroneously believed that it was bound by prior decisions, regardless of changing conditions.
The Commission argues that it properly denied that application based, in part, on traffic conditions and the potential negative impact it would have on the health, safety, and welfare of the neighborhood. The Commission further argues that the plaintiffs' application was not consistent with the Town Plan. Finally, the Commission contends that it understood the DPD zone and properly determined that it was not appropriate for the property in question.
The plaintiffs first argue that the Commission's interpretation of traffic conditions was improper. The Commission denied the proposed amendment in part because "[s]ubstantial additional traffic would be added to an already congested thoroughfare negatively impacting the public health, safety and welfare." Denying the zone change, the Commission reasoned that whereas "the present single-family zone designation is not likely to generate additional traffic that would adversely affect vehicular circulation on Danbury Road and in the immediate CT Page 3029 neighborhood. Rezoning the 11-acre tract for professional uses would generate substantial traffic and, hence, add to the overburdened roadway system and the area infrastructure . . . ."
According to the plaintiffs, residential, two acre lots are inappropriate because the traffic is so heavy. The defendant counters that "[t]o change the zone to a more intense use would only exacerbate the current traffic congestion." Both parties agree that Danbury Road is presently congested and overburdened with traffic. The Commission's conclusion that additional traffic would lead to greater congestion is reasonably supported by the record.
The plaintiffs have conceded that the increase in traffic from the change of zone would be "significant."[2] Although the plaintiffs did not submit a formal traffic study, the plaintiffs' own estimates reveal that traffic would substantially increase. The plaintiffs suggested traffic increases by extrapolating from a prior traffic study done on an adjacent property; this study was itself derived from an earlier study. The plaintiffs relied on the calculations made by their attorney from these sources. According to these calculations, an average figure for the increase in traffic would be 687.5 trips a day. The Commission could reasonably determine that such an increase would lead to worse congestion on Danbury Road.
In addition to the concessions of the plaintiffs, there is other evidence regarding traffic conditions that supports the Commission's decision. The Conservation Commission of Ridgefield determined that the more intense uses of the DPD zone "will increase traffic congestion substantially on Danbury Road."
Furthermore, numerous neighbors spoke out with regard to the terrible traffic conditions on Danbury Road. For example, one property owner along Danbury Road stated that traffic is so heavy that he cannot sell his house and has great difficulty even driving onto Danbury Road. Many others who live on or near Danbury Road also testified as to the tremendous amount of time it takes to get onto Danbury Road.
Commission members also voiced concerns about increased traffic and its impact on the health, welfare and safety of the community. According to one member, the increase in traffic would lead to "pretty astounding numbers even in the context of the traffic on Danbury Road." The minutes of the Commission's March CT Page 3030 5, 1996 meeting reveal that, for several members, traffic was a significant factor in denying the application.
General Statutes § 8-2 provides that the zoning commission shall "lessen congestion in the streets." General Statutes § 8-2 (a). The plaintiffs attempt to draw a distinction between overall traffic volume and traffic congestion. The plaintiffs argue that because the Commission's conclusion was based on overall volume, the decision is arbitrary and illegal. The plaintiffs cite to Lathrop v. Planning ZoningCommission, 164 Conn. 215, 222, 319 A.2d 376 (1973), for the proposition that General Statutes § 8-2 refers to density of traffic, rather than the overall or hourly volume of traffic. See also Grace Community Church v. Planning Zoning Commission,42 Conn. Sup. 256, 263, 615 A.2d 1092 (1992).
The Commission's reasons for denial include the addition of substantial traffic to an already "overburdened" or "congested" roadway, adversely affecting "vehicular circulation." This language may be interpreted as indicating that traffic congestion would increase if the plaintiffs' zone change was approved. Even if the decision does not specifically focus on congestion, the Commission's stated reasons encompass a finding of increased traffic congestion from the zone change. Primerica v. Planning Zoning Commission, 211 Conn. 85, 97, 559 A.2d 646 (1989) (reasons focusing on increase in peak hour traffic encompass a finding of congestion in off-peak hours). Therefore, the Commission determined that the zone change would lead to increased traffic congestion and that such a determination is reasonably supported by the record.
The plaintiffs further argue that the Commission misconstrued the concept of a DPD zone by emphasizing its non-residential uses. The DPD zone is intended to "provide for the appropriate and beneficial use of land and structures and to preserve the value thereof in areas primarily residential and transitional in character, and to preserve, insofar as practicable in such areas, the existing character, intensity, compatibility and amenities including older structures, natural growth and appurtenances of aesthetic and historical significance." Ridgefield Zoning Regulations, 309.0.
The plaintiffs have acknowledged that non-residential uses of the rezoned property, such as professional offices, are potential uses. It is these more intense uses of the property which would CT Page 3031 generate the increased traffic congestion discussed above. The increased traffic and non-residential uses do not further the intent of the zoning regulations.
The presence of professional offices would alter the intensity and character of the neighborhood. While the plaintiffs are correct that residential uses are still permitted under the DPD zone, realistically, non-residential uses cannot be ignored.[3] Several Commission members expressed concern over the plaintiffs' emphasis on the DPD as a residential zone, given the many non-residential uses allowed under the DPD. One Commission member discussed the inevitable pressure to allow professional buildings and offices once the property was rezoned to DPD. In addition, many people living in the surrounding area expressed concern that the DPD zone would change the character of the community. Thus, the record reveals that the Commission properly considered the DPD zone in this context.[4]
The plaintiffs also argue that the Commission inappropriately feared a "domino effect." The Commission found that redesignation of the property for more intensive uses "would prompt long-term neighborhood instability and ultimately trigger a `domino effect' that could be used as a rationale to request the rezoning of other properties [to] more intensive non-residential uses." The record before the Commission supports its concern that rezoning the property would lead to a chain reaction of petitions for zone changes by area property owners.
The letter of the Conservation Commission of Ridgefield supports the Commission's reasoning. The Conservation Commission warned that "[i]f the Planning and Zoning Commission grants this rezoning, it will soon be faced with additional applications from homeowners bordering on Danbury Road to the North." In addition, Commission members and neighbors of the plaintiffs expressed similar concerns. Many neighbors voiced opposition to the zone change based on maintaining the residential area of the neighborhood as well as traffic concerns. Therefore, the record indicates that the Commission appropriately considered the effect on the character of the neighborhood.
Furthermore, the plaintiffs bear the burden of showing that the Commission's actions were an abuse of its discretion. "This legislative discretion is wide and liberal, and must not be disturbed by the courts unless the party aggrieved by that decision establishes that the commission acted arbitrarily or CT Page 3032 illegally." (Internal quotation marks omitted.) ProtectHamden/North Haven v. Planning Zoning Commission, supra,220 Conn. 543. The plaintiffs have failed to show that the Commission's concern over a "domino effect" that would destroy the residential character of the neighborhood was arbitrary or illegal.
The plaintiffs also argue that the Commission's concern with the "domino effect" indicates that its decision was dictated by prior Commission decisions. This argument reflects a misinterpretation of the Commission's reasoning. While the Commission does refer to having considered the area in the past, it never states that it was bound by the decisions made.[5]
Rather, the Commission refers to a long-standing principle adhered to by consecutive boards and reaffirms its belief in halting further commercial development along Danbury Road. Furthermore, the Commission's decision gives additional, particular reasons for the denial, which indicates that the Commission treated the petition on a case-by-case basis. The extensive hearings held on the matter also indicate that the Commission considered the plaintiffs' petition on an individual basis.
Finally, the plaintiffs argue that a reversal of the Commission's denial is required by the Superior Court decision ofSmith v. Milford Planning Zoning, Superior Court, judicial district of Milford, Docket No. 045023 (October 28, 1994, Curran, S.T.R.; 12 Conn. L. Rptr. 590). In Smith, the plaintiff appealed from a decision of the planning and zoning board denying his application for a change of zone from Residential One Acre to General Business. Id. The property in question was designated under the Neighborhood Plan of Development as a neighborhood business use. The property was surrounded by non-residential zones and the Wilbur Cross Parkway. "[T]he Board gave as its reason that it `felt it was better not to change the zone without a site plan filed concurrently.'" Id. Yet the board had previously waived the requirement that the plaintiff file a concurrent site plan. The court stated that the property "will never be developed for residential purposes." Id. The court concluded that the decision of the board was patently arbitrary.
Smith is distinguishable from the present appeal. UnlikeSmith, the plaintiffs' property is not completely surrounded by non-residential zones. In addition, the plaintiffs' proposed use under a DPD zone is not consistent with the Town Plan, which CT Page 3033 designates the property as a two-acre residential zone. Furthermore, the Commission's denial here is a decision based on reasons supported by the record, rather than upon a reversal of a waiver freely given. Thus, Smith is not applicable.
For the reasons set forth above, the court dismisses the plaintiffs' appeal.
Stodolink, J.