[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, homeowners and a neighborhood association, appeal from the action of the defendant Westport Planning Zoning Commission (commission) granting with conditions and modifications the application of the defendants Conservative Synagogue and Three Hundred PRW Associates[1] for a special permit and site plan approval to construct a synagogue building on a 4.7 acre parcel in a Residence AA zone. The plaintiffs' appeal enumerates over sixteen claims of error against the commission. In their brief, however, the plaintiffs claim that the commission erred by (1) approving an application which was substantially unchanged from a prior application which it had denied, (2) approving an application which violated the parking and/or coverage requirements in the regulations, (3) approving the application despite uncontroverted expert testimony that the synagogue would have an adverse impact on neighborhood property values, (4) necessarily finding that the application conformed to certain sections of the zoning regulations, (5) accepting and acting on an incomplete and inadequate application, and (6) imposing illegal and improper conditions of approval in its decision. "Issues that were raised in the appeal but not briefed by the plaintiff[s] . . . are considered abandoned." Grace Community Church v. Planning Zoning Commission, 42 Conn. Sup. 256, 259, 615 A.2d 1092
(1992) (Fuller, J.).
 I
General Statutes § 8-8(b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior CT Page 10781 court. . . ." "`Board' means a . . . combined planning and zoning commission. . . ." General Statutes § 8-8(a)(2). Even though the defendants have not challenged the plaintiffs' claim that they are aggrieved, "[p]roof of aggrievement is essential to a court's jurisdiction of a zoning appeal. Hughes v. Town Planning ZoningCommission, 156 Conn. 505, 509, 242 A.2d 705 (1968)." ConnecticutResources Recovery Authority v. Planning Zoning Commission,225 Conn. 731, 739 n. 12, 626 A.2d 705 (1993). For that reason, in a zoning appeal, the court should make a finding as to whether any plaintiff is aggrieved. Baccante v. Zoning Board of Appeals,153 Conn. 44, 45, 212 A.2d 411 (1965); Fox v. Zoning Board of Appeals,146 Conn. 665, 667, 154 A.2d 520 (1959). The evidence before the court establishes that the plaintiffs Louis Sneiderman, Phyllis Sneiderman, Jerald Froschauer, Linda Froschauer, John T. Bays, Mindy Bays, Christine Landgraf and Karl Landgraf own property abutting or within 100 feet of the subject property. By statutory fiat those plaintiffs are aggrieved. Zoning Board of Appeals v.Planning Zoning Commission, 27 Conn. App. 297, 301, 605 A.2d 885
(1992). General Statutes § 8-8(a)(1) provides that an "`aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." Since some of the plaintiffs are aggrieved, "it is not necessary to resolve whether the other plaintiffs are aggrieved; see Concerned Citizens of Sterling, Inc.v. Connecticut Siting Council, 215 Conn. 474, 479n. 3,576 A.2d 510 (1990); and we refer herein to all the plaintiffs as the plaintiffs." Protect Hamden/North haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527, 529n. 3, 600 A.2d 757 (1991).
 II
Before turning to the merits of the plaintiffs' claims, it is well to observe the standard of review which the court must observe in examining the action of the commission in granting a special permit and site plan approval. Under the regulations, site plan documents must be submitted as part of a special permit application. Zoning Regulations §§ 44-1 to 44-4. Accordingly, the two are inseparable. SSM Associates Limited Partnership v. Plan Zoning Commission, 211 Conn. 331, 559 A.2d 196 (1989). Indeed, under the regulations, "[i]n reviewing a special permit application, the Commission shall consider all the standards contained in Sec. 44-5, Site Plan Standards and Objectives," as well as the standards and objectives specifically prescribed for special permits. Zoning Regs. § 44-6. "When considering an CT Page 10782 application for a special [permit], a zoning authority acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and statutes are satisfied. A.P.W. Holding Corporation v. Planning ZoningBoard, 167 Conn. 182, 185, 355 A.2d 91 (1974). It has no discretion to deny the special [permit] if the regulations and statutes are satisfied. Westport v. Norwalk,167 Conn. 151, 155, 355 A.2d 25 (1974)." Daughters of St. Paul, Inc.v. Zoning Board of Appeals, 17 Conn. App. 53, 56, 549 A.2d 1076
(1988). In reviewing the action of a board on a special permit, "[c]ourts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or valid reasons. (Citations omitted.) Whittaker v. Zoning Board of Appeals, 179 Conn. 650,654, 427 A.2d 1346 (1980). Since the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency; Feinson v. ConservationCommission, 180 Conn. 421, 425, 429 A.2d 910 (1980); the court must determine the correctness of the conclusions from the record on which they are based. Housatonic Terminal Corporation v.Planning Zoning Board, 168 Conn. 304, 306, 362 A.2d 1375 (1975). The record includes knowledge acquired by board members through personal observation. Burnham v. Planning Zoning Commission,189 Conn. 261, 267, 455 A.2d 339 (1983)." (Internal quotation marks omitted.) Torsiello v. Zoning Board of Appeals, 3 Conn. App. 47,49-50, 48 A.2d 483 (1984). "The decision of the zoning authority will only be disturbed if it is shown that it was arbitrary, illegal or an abuse of discretion." Id., 50.
 III
The plaintiffs first claim that the commission erred in approving the synagogue's application because that application was substantially the same as a prior application which the commission had denied. The court disagrees.
Additional facts are necessary for the disposition of this claim. Previously, on April 29, 1992, the synagogue submitted an application for a special permit and site plan approval for the same use. The application provided for fifty paved parking spaces. That application was "denied without prejudice"[2] on August CT Page 10783 17, 1992 for eight reasons, all of which are fairly referable the issue of sufficient off-street parking. Over four months later, the synagogue submitted the present application for a special permit and site plan approval. The second application reconfigured the original fifty parking spaces and also provided "overflow" parking for fifty-one additional vehicles on a grassy portion of the property. That application was approved.
"There is a well established concept in the administrative law of this state which prohibits an administrative agency from reversing its prior decision unless the facts and circumstances which resulted in the decision have sufficiently changed to materially affect the reason which produced and supported the decision and no vested rights have intervened.Laurel Beach Assn. v. Zoning Board of Appeals of Milford,166 Conn. 385, 387, 349 A.2d 834 (1974); Hoffman v. Kelly,138 Conn. 614, 616-17, 88 A.2d 382 (1952); St. Patrick's ChurchCorporation v. Daniels, 113 Conn. 132, 139-140, 154 A. 343
(1931); Carlson v. Fisher, 18 Conn. App. 488, 497, 558 A.2d 1029
(1989); Root v. Zoning Board of Appeals of Madison, 41 Conn. Sup. 218,220-21, 565 A.2d 14 (1989).
"An administrative agency which has acted on a special permit application is not allowed to reverse itself unless a change of circumstances intervenes which materially affects the merits of the case, except that it can grant a second application which has been substantially changed to meet the objections the agency had to the original application.Rocchi v. Zoning Board of Appeals of Glastonbury, 157 Conn. 106,111, 248 A.2d 922 (1968); Mitchell Land Co. v. Planning Zoning Board of Appeals of Greenwich, 140 Conn. 527,534-35, 102 A.2d 316 (1953)." Grace Community Church v. Planning Zoning Commission, supra 42 Conn. Sup. 270-271. The rule is grounded in the necessity to deter the exertion of improper influences and lend finality to the board's determination; Rocchiv. Zoning Board of Appeals, 157 Conn. 106, 111 (1968); and to prevent interested parties from being "`unduly harassed and injured through being called upon to contest repeated and frequently recurring agitations pertaining to the same subject matter.'" Bright v. Zoning Board of Appeals, 149 Conn. 698, 705,183 A.2d 603 (1962).
"The determination as to whether the application under review is substantially the same as the prior application . . . is for the defendant [commission] to determine in the first instance." CT Page 10784Bradley v. Inland Wetlands Agency, 28 Conn. App. 48, 51,609 A.2d 1043 (1992). In reviewing that determination on appeal, the function of the court is not to reach its own conclusion upon subordinate facts "but only to determine whether the conclusion of the commission on those facts was unreasonable or illogical";Hoffman v. Kelly, supra, 617; or an abuse of its discretion.Winchester Woods Associates v. Planning Zoning Commission,219 Conn. 303, 311-312, 592 A.2d 953 (1991). The record as a whole and specifically the transcript of the hearing before the commission and the minutes of the commission's deliberations show that it was aware of its denial of the previous application. As with the first application, the issue of the sufficiency of parking dominated these deliberations. By approving the present application the commission necessarily found that the second application was substantially changed from the first application. That determination was not unreasonable, illogical or an abuse of discretion. See Mitchell Land Co. v. Planning Zoning Board, supra, 140 Conn. 534-535.
 IV
The plaintiffs claim that the commission acted illegally in approving the synagogue's application because that application failed to provide the quantity of parking spaces required by the zoning regulations. Section 34-5 of the zoning regulations provides that for "[t]heaters, churches and other places of worship" the minimum required off-street parking is "1 space for each 3 seats." The commission found that the proposal complied with this regulation. "It is undisputed," as the plaintiffs concede, "that the sanctuary included in [the] proposed synagogue contains 144 seats. . . ." The synagogue's application provides for fifty paved parking spaces, thereby ostensibly satisfying the one-to-three parking spaces-to-seats requirement. But, observe, the plaintiffs, "[t]he [a]pplicant's building proposal, containing 16,000 square feet, also includes a kiddish area and a social hall. . . ." Therefore reason the plaintiffs, "utilizing the [a]pplicant's social hall capacity figure of 240 people, and the sanctuary seating of 144 people, the total of 384 people requires on-site parking of 128 spaces, which is more than the 101 provided." (Emphasis added.) Thus the plaintiffs implicitly posit that "seat" includes seating capacity.
The regulation requires "1 space for each 3 seats." "The question as to the meaning of the word [`seat'] as used in the ordinance is a matter of construction and therefore one of law." CT Page 10785Langbein v. Board of Zoning Appeals, 135 Conn. 575, 579,67 A.2d 5 (1949). "In construing regulations, the general rules of statutory construction apply." Smith v. Zoning Board of Appeals,227 Conn. 71, 89 (1993). Therefore, "[t]hese regulations must be interpreted in accordance with the ordinary rule of statutory construction that, where the language of the statute is clear and unambiguous, courts cannot by construction read into the statutes provisions which are not clearly stated. Harlow v. Planning Zoning Commission, 194 Conn. 187, 193, 479 A.2d 808 (1984). In addition, words employed in zoning ordinances are to be interpreted in accord with their natural and usual meaning.Lawrence v. Zoning Board of Appeals, 158 Conn. 509, 511,264 A.2d 552 (1969)." Schwartz v. Planning Zoning Commission,208 Conn. 146, 153, 543 A.2d 1339 (1988). In determining the natural and usual meaning of a word we may refer to dictionary definitions.Fisette v. DiPietro, 28 Conn. App. 379, 384 (1992). In Webster's Ninth New Collegiate Dictionary (1991), the word "seat" is defined as "a chair, stool, or bench intended to be sat in or on." Since the only such objects identified in the record are the 144 seats in the sanctuary, the fifty parking spaces satisfy the requirements of regulations. Had the legislature which enacted the regulations intended that there be provided a certain number of parking spaces for a given seating capacity, it could easily had done so.[3]
 V
The plaintiffs claim that the commission approved an application which violated the coverage requirements contained in the regulations. The court agrees.
Section 12-6 of the regulations provides that in a Residence AA district, "[t]he total coverage shall not exceed twenty-five percent (25%) of the lot area. Total coverage shall include fifty percent (50%) of the surface area of tennis courts." Section 5-2 of the regulations provides in pertinent part: "Except as otherwise stated, or as the context may otherwise require, the following words, for the purpose of these regulations, shall be defined as follows: . . . Coverage, Total: The percentage of . . . a lot in a Residence Zoning District, occupied or intended to be occupied by all buildings, structures, parking areas, driveways,and similar improvements. Patios and terraces, as defined herein, shall be excluded. Total coverage shall include the building area and 50% of the surface area of tennis courts, but no more than 20% of the land covered by water bodies, watercourses, wetlands, and CT Page 10786 land of severe topography having slopes of twenty-five percent (25%) or greater shall be included in the lot area used for computing the maximum allowable total coverage . . . ." (Emphasis added.) The defendants argue that the overflow parking area need not be paved,[4] that the reference to "improvements" qualifies "parking areas", and that since the overflow parking area need not be paved it is not an "improvement." "In Black's Law Dictionary an `improvement' is defined as `[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement of waste, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.'" Manley v. Pfeiffer, 176 Conn. 540, 544, 409 A.2d 1009
(1979); see Masterson v. Atherton, 149 Conn. 302, 312,179 A.2d 592 (1962). The plaintiffs rejoin that the overflow parking area indeed must be paved but that, in any event, § 5-2 requires that "parking areas" be included in the calculation of coverage.
The task of the court now is to undertake a "reasoned and principled statutory construction" of the regulations. State v.Proto, 203 Conn. 682, 698, 596 A.2d 1297 (1987). "Construction of zoning regulations is a regular function of the courts. See, e.g.,Pascale v. Board of Zoning Appeals, 150 Conn. 113, 116,186 A.2d 377 (1962). The full panoply of principles of statutory construction are available to aid in the construction of local ordinances.Manchester v. Manchester Police Union, 3 Conn. App. 1, 6,484 A.2d 455 (1984); see Shelby Mutual Ins. Co. v. Della Ghelfa,3 Conn. App. 432, 489 A.2d 398 (1985), [aff'd, 200 Conn. 630,513 A.2d 52 (1986)]; East Lyme v. Waddington, 4 Conn. App. 252, 259n. 2, 493 A.2d 903 (1985)." (Internal quotation marks omitted.)Czajkowski v. Planning Zoning Board, 14 Conn. App. 283, 288,540 A.2d 716 (1988); see Smith v. Zoning Board of Appeals,227 Conn. 71, 89, 629 A.2d 1089 (1993). The first principle of statutory construction is "to ascertain and give effect to the apparent intent of the legislature"; Vaillancourt v. New BritainMachine/Litton, 224 Conn. 382, 390, 618 A.2d 1340 (1993); "as found from the words employed in the ordinance. Fox v. ZoningBoard of Appeals, 146 Conn. 70, 73, 147 A.2d 472 [1958]. The words employed are to be interpreted in their natural and usual meaning." Lawrence v. Zoning Board of Appeals, 158 Conn. 509, 511,269 A.2d 552 (1969).
Essentially, the defendants argue that the words "parking area" in the regulation must be modified in light of the words "or similar improvements" subsequently appearing in the same CT Page 10787 regulation. The contrary is true. It is so that "under the maxim of `noscitur a sociis,' the meaning of a particular word or phrase in a statute is ascertained by reference to those words or phrases with which it is associated. See Schreiber v. Burlington Northern,Inc., 472 U.S. 1, 8, 105 S.Ct 2458, 86 L.Ed.2d 1 (1985); GeneralElectric Co. v. Occupational Safety Health Review Commission,583 F.2d 61, 65 (2d Cir. 1978); United States v. LaBrecque,419 F. Sup. 430, 434 (D.N.J. 1976)." Staples v. Palten, 214 Conn. 195,199-200, 571 A.2d 97 (1990). However, "[i]t is a well-settled principle of construction that specific terms covering the even subject matter will prevail over general language of the same or another statute which might otherwise prove controlling. CharltonPress, Inc. v. Sullivan, 153 Conn. 103, 110, 214 A.2d 354 [1965]. Where there are two provisions in a statute, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one case or subject within the scope of a general provision, then the particular provision must prevail; and if both cannot apply, the particular provision willbe treated as an exception to the general provision. Kelly v.Dewey, 111 Conn. 281, 292, 149 A. 840 [1930]. Budkofsky v.Commissioner of Motor Vehicles, 177 Conn. 588, 592, 419 A.2d 333
(1979)." (Emphasis added.) Gaynor v. Union Trust Co., 216 Conn. 458,476-77, 582 A.2d 190 (1990). Thus construing the definition of total coverage in § 5-2, parking areas must be included in the calculation of coverage whether or not such areas are paved. There is no question but that once the overflow parking area is included in the coverage total, total coverage exceeds twenty-five percent, the maximum allowable under § 12-6 of the regulations.
 VI
Because there was uncontroverted expert testimony that the proposed synagogue would reduce the fair market value of a nearby estate, claim the plaintiffs, the commission erred in approving the application. Section 44-5 of the regulations provides in pertinent part: "In reviewing the Site Plan, the Commission shall take into consideration the public health, safety and general welfare and as a condition of approval may require such modifications of the proposed plans as it deems necessary to comply with specific areas, bulk, parking, landscaping, sign and document standards contained herein as well as to assure the accomplishments of the following general objectives . . . 44-5.4Landscaping and Screening That the proposed development . . . will preserve and enhance the adjacent property values. . . ." Section 44-6 of the regulations, entitled "Special Permit Standards", CT Page 10788 provides in pertinent part: "In reviewing granting any Special Permit, the Commission shall determine that the proposed use conform to the overall intent of these regulations and shall consider in each case whether the proposed use will . . . [n]ot have a significant adverse affect on adjacent areas located within the close proximity to the use. . . ."
In its detailed findings, the commission found that the proposed "building has a small-scale residential appearance because of the pitched roof and height that is significantly less than the maximum of three stories and 40 feet. It will be nestled into its site and surrounded by a wooded landscape. . . . The proposed use is in conformance to the 1987 Town Plan of Development. It is consistent with Westport's desire to be primarily a single-family residential town since houses of worship are an important component of community life. . . . The proposed use will not have a significant adverse affect on adjacent areas located within close proximity to the use, because all traffic enters and exits through the commercial zone to Post Road West and does not impact the residential area."
An opponent to the application presented evidence from a real estate appraiser that the fair market value of a residential estate which abuts the subject property would be reduced about fifteen percent if the proposed synagogue were built.
The short answer to this claim of the plaintiffs is that "[a]n administrative agency is not required to believe any witness, even an expert." Manor Development Corporation v.Conservation Commission, 180 Conn. 692, 697, 433 A.2d 999 (1980). This is especially so with respect to matters such as the impact of a proposed development on local property values. Holt-Lock,Inc. v. Zoning Planning Commission, 161 Conn. 182, 191,286 A.2d 299 (1971); Cameo Park Homes, Inc. v. Planning ZoningCommission, 150 Conn. 672, 679-80, 192 A.2d 886 (1963). This case, therefore, is unlike Feinson v. Conservation Commission, 180 Conn. 421,429 A.2d 910 (1980), and its progeny, in which a land use commission disregarded uncontroverted expert evidence "concerning technically complex issues. . . ." Id., 429. Nor is this a case such as Builders Service Corporation v. Planning ZoningCommission, 208 Conn. 267, 294, 545 A.2d 530 (1988), in which the court stated that a trier cannot "arbitrarily disregard, disbelieve or reject an expert's testimony in the first instance. . . . Where the [trier] . . . rejects the testimony of a[n] . . . expert, there must be some basis in the record to support the CT Page 10789 conclusion that the evidence of the expert witness is unworthy of belief." (Internal quotation marks and citations omitted.) In this case the expert's opinion was based on comparable sales of residential properties adjacent to houses of worship in other parts of the state. The commission was not bound to conclude that the appraiser's comparables were sufficiently similar to properties adjacent to the subject site. Moreover, the estate for which the appraiser prepared his report is adjacent to three office buildings; the commission was not bound to believe that the addition of a house of worship on the Post Road, and with its sole traffic outlet onto the Post Road, would visit a substantial diminution in property values. Compare West Hartford MethodistChurch v. Zoning Board of Appeals, 143 Conn. 263, 121 A.2d 640
(1956). The commission found that the proposed synagogue would not have a significant adverse effect on adjacent areas. This finding was neither arbitrary nor an abuse of discretion.
 VII
The plaintiffs claim that the commission erred in finding, without substantial evidence that the synagogue's application conformed with sections 34-11, 44-5.2 and 44-2.5(d) of the regulations. The court disagrees.
Section 34-11 of the regulations provides in pertinent part: "The general layout and traffic circulation of parking and loading areas shall be designed so as to avoid unsafe conditions [and] traffic congestion in the streets upon which the area has access and to provide for the safety and adequacy of access for vehicles and pedestrians using the area. . . ."
Section 44-5 of the regulations, entitled "Site Plan Standards and Objectives", provides: "In reviewing the Site Plan, the Commission shall take into consideration the public health, safety and general welfare and as a condition of approval, may require such modifications of then proposed plans as it deems necessary to comply with the specific areas, bulk, parking, landscaping, sign and document standards contained herein as well as to assure the accomplishments of the following general objectives . . . 44-5.2 Traffic and Pedestrian Access That all proposed vehicular and pedestrian accessways are safely designed, adequately provided and conveniently arranged to prevent traffic and pedestrian hazards both within the site and on the street. At least the following aspects of the site plan shall be evaluated to determine conformity to this objective: (a) the number, location CT Page 10790 and dimensions of vehicular and pedestrian entrances, exits, drives and walkways. (b) The width, grade and alignment of entrances and exits. (c) The distance of entrances and exits from the street corners, places of public assembly and other accessways. (d) the visibility in both directions at all exit points of the site and the visibility of a vehicle entering or exiting the site to the driver of a vehicle traveling on the street."
Section 44-2.5 of the regulations, entitled "Traffic Report", provides: "A traffic analysis shall be required for any project containing either forty (40) or more parking spaces in a new or expanded parking lot or twenty thousand (20,000) or more square feet of gross floor area in a new or expanded building. the [The] traffic analysis shall include at least the following information: past and present roadway conditions, existing roadway capacity, traffic accidents, existing and projected traffic volumes (ADT, Peak A.M. and Peak P.M.) existing and projected volume/capacity ratios, existing and proposed sightlines based on facts and reasonable generation factors for the site and affected road networks and intersections. (a) The project shall be designed to minimize left turn movements or conflicts on the street at the site. (b) Driveways shall be designed to achieve clear sight lines based on a minimum thirty five (35) mph design speed. (c) the project design shall consider interconnecting parking areas, shared common access drives and future access connections to adjacent property. (d) Where it is projected that the additional traffic resulting from the project will exceed a volume/capacity ratio of 0.8 on the adjacent streets, increase the peak hour volume by ten (10) percent or more, reduce the Level of Service to `D' or below, or further reduce the level of Service when it is already at `D' or below. The Commission shall not approve the project unless and until either: (1) provision has been made by the applicant for the improvement of said inadequate condition; or (2) the proposed project has been otherwise reduced or modified to mitigate the adverse impacts."
The plaintiffs claim "that the record is replete with evidence of non-compliance with these requirements." They point out the flaws in the study submitted by the synagogue especially in relation to the traffic study submitted by opponents of the application. "The conflicting opinions should not have been surprising, and are reminiscent of another case where the court noted: `Most of the oral testimony before the commission consisted of glowing statements by the proponents' attorneys on the CT Page 10791 advantages to the community of the project, while the attorneys for the opponents painted a gloomy picture of the effect upon the neighborhood if the gargantuan plans received approbation. Each side produced experts, or reports by experts, in the fields of traffic control and town planning. Their opinions favored the view of their employers.' Whalen v. Town Plan Zoning Commission,146 Conn. 321, 325-26, 150 A.2d 312 (1959)." Grace Community Church v.Planning Zoning Commission, supra, 42 Conn. Sup. 264-65. The issue of traffic, and all of its ramifications, was thoroughly thrashed out during the public hearing. After a painstaking review of the voluminous record, this court concludes that what the plaintiffs characterize as a failure of the applicant to comply with the zoning regulations is in reality an attempt to have this court reweigh the evidence and reach a judgment contrary to that reached by the board. This the court may not do. Mobil OilCorporation v. Zoning Board of Appeals, 35 Conn. App. 204, 209-212,644 A.2d 401 (1994) (trial court erred in reweighing evidence regarding traffic congestion). "The settled standard of review of questions of fact determined by a zoning authority is that a court may not substitute its judgment for that of the zoning authority as long as it reflects an honest judgment reasonably exercised."Oakwood Development Corporation v. Zoning Board of Appeals,20 Conn. App. 458, 460, 567 A.2d 1260, cert. denied, 215 Conn. 808,576 A.2d 588 (1990). Facts supporting the agency's decision also include knowledge acquired by commission members through personal observation of the site, or through personal knowledge of the area involved in the application. Ibid.; Mobil Oil Corporation v.Zoning Board of Appeals, supra, 209n. 6. Credibility of witnesses is also within the discretion of the commission. Spectrum ofConnecticut, Inc. v. Planning Zoning Commission, 13 Conn. App. 159,163, 535 A.2d 382, cert. denied, 207 Conn. 804, 540 A.2d 373
(1988). After reviewing the record as a whole in the light of this standard of review, the court concludes that the commission could reasonably find that the applicant complied with the zoning regulations and that the traffic congestion anticipated by the plaintiffs and their expert would not result.
 VII
The plaintiffs contend that the commission approved the application notwithstanding its noncompliance with the requirement in the regulations for loading spaces. The commission found that "[t]he proposed Conservative Synagogue will be in conformance with the standards for the Residence AA District (§ 12), including Lot Area and Shape, Setbacks, Height, Coverage, Parking and Loading, CT Page 10792 Landscaping, Screening and Buffer Areas. . . ." (Emphasis added.) Section 12-11 of the regulations provides: "Off-street parking and loading shall be provided in accordance with section 34 of the Supplementary Regulations." Section 34-10 of the regulations provides: "Each hospital, institution, office, or commercial building or other commercial structure or group of commercial buildings on the same lot shall provide off-street loading spaces on the same lot as the principal building or structure, in accordance with the following minimum standards. . . ." (Emphasis added.) The plaintiffs claim that the proposed synagogue is an "institution" within the meaning of this regulation and that the applicant failed to comply with it. The defendants argue that "[t]he plans for the Synagogue clearly show the service drive leading to the service area in the rear of the building where supplies will be unloaded." This is so. However, the plans do not depict any loading spaces. The defendants also contend that "the Commission reasonably interpreted its own regulation that the Synagogue was not a `hospital, institution, office or commercial building or other commercial structure . . .' and, therefore, the service area and service road were adequate."
The word "institution" is not defined in the regulations. However, § 5-1 of the regulations provides: "In the interpretation and use of these regulations, words and phrases shall be construed according to the commonly approved uses of the language; except that technical words and phrases shall be construed and understood in accordance with commonly accepted technical meanings. . . . Words not specifically defined herein shall be used as defined in a Webster's New Collegiate Dictionary no more than 5 years old." Webster's Ninth New Collegiate Dictionary (1991) defines the noun "institution" as "1: an act of instituting: ESTABLISHMENT 2 a:
a significant practice, relationship, or organization in a society or culture the of ~ marriage; also: something or someone firmly associated with a place or thing she has become an ~ in the theater b: an established organization or corporation (as a college or university) esp. of a public character; also: ASYLUM . . . ." (Emphasis in original.)
Clearly, for some purposes, a church or synagogue may be an institution, specifically a religious institution. Cf. Cochran v.McLaughlin, 128 Conn. 638, 640, 24 A.2d 836 (1942). The issue here, however, is its definition for purposes of § 34-10 of the zoning regulations. In this context, the word "institution" is ambiguous. CT Page 10793
Accordingly, the court again must resort to the rules of construction. Here, the maxim of "noscitur a sociis"; Staples v.Palten, supra; is of little assistance. Reference to the other words in the regulation indicating that an institution may be of a commercial nature, however, does reflect that an institution may be of either a public or private nature. Another rule of construction holds that "[z]oning regulations, which are in derogation of common law property rights, should not be construed to include or exclude by implication matters that are not clearly within their expressed terms. Planning Zoning Commission v.Gilbert, 208 Conn. 696, 705, 546 A.2d 823 (1988)." Grace CommunityChurch v. Planning Zoning Commission, supra, 42 Conn. Sup. 268; see, e.g., Hassett v. Carroll, 85 Conn. 23, 32-33, 81 A. 1013
(1911) (school district was not an "institution", strictly construing that term). Even strictly construed, however, the word "institution" as used in § 34-10 cannot fairly be interpreted as other than a use or facility, public or private, which is of some continuing nature; First Nat. Bank of Glens Falls v. Sheehan,30 App. Div. 2d 912, 292 N.Y.S.2d 741, 743 (1968); and having a substantial degree of internal organization and legally sanctioned stability. Asplund v. Marjohn Corp., 66 N.J. Super. 225,168 A.2d 844, 848 (1961); see generally 21A Words and Phrases (West), p. 493 et seq., as supplemented. Thus construed, a synagogue is an institution. Since it is an institution, and since the plans submitted by the applicant did not depict the requisite number of off-street loading spaces, the commission acted illegally in approving the application.
 IX
The plaintiffs contend that the commission erred in approving an application that failed to comply with § 37 of the regulations which require the filing of a sediment and control plan.
Section 37-1 states: "The purpose of these Sediment and Erosion Control Regulations is to reduce accelerated soil erosion; reduce the danger from storm water runoff and to minimize nonpoint sediment pollution resulting from and being developed." In furtherance of that purpose, § 37-2 of the regulations provides that a sediment and erosion "[p]lan shall be submitted with any application for development when the disturbed area of such development is cumulatively more than one-half (1/2) acre."[5]
Section 37-6 of the regulations provides for the contents and "standards" of such a plan.[6] No such plan appears in the record. CT Page 10794
The defendants counter that the record reflects that a "conceptual" plan was submitted to the Conservation Director who reviewed it and requested that the final plan be submitted together with a "narrative" before a zoning permit was issued. The Conservation Commission reviewed this "plan" and also required that a final plan be submitted prior to the issuance of a zoning permit. Section 37-4 does provide that "[a]ll S E [sediment and control] Plans shall be submitted to the Conservation Director forrecommendation prior to the filing of any application with either the Planning and Zoning Commission or the Zoning Board of Appeals, as applicable or prior to the issuance of a Zoning Permit. The Conservation Director shall review the plan to determine compliance with Section 37-5[7] below and shall inform the appropriate authority and the applicant of his/her recommendation
within thirty (30) days of the date of receipt of said plan. Upon receipt of the Conservation Director's recommendations the Zoning Enforcement Officer shall certify that the plan complies with the requirements of this Section." (Emphasis added.)
The "conceptual" plan, alone, submitted by the applicant, did not comply with the regulations. This conclusion is supported by provisions in the General Statutes. Sediment and erosion control regulations are not unique to this municipality. They are mandated by General Statutes § 22a-329.[8] More, General Statutes § 22a-327(5) states what a soil erosion and sediment control plan is and shall contain: "`Soil erosion and sediment control plan' means a scheme that minimizes soil erosion and sedimentation and includes, but is not limited to, a map and narrative. The map shall show topography, cleared and graded areas, proposed area alterations and the location of and detailed information concerning erosion and sediment measures and facilities. The narrative shall describe the project, the schedule of major activities on the land, the application of conservation practices, design criteria, construction details and the maintenance program for any erosion and sediment control facilities that are installed. . . ." No such plan was filed by the applicant. To allow the applicant's "conceptual" plan to pass muster would trivialize these requirements into "a consciousness-raising exercise [rather] than as obligatory regulations." Tondro, Connecticut Land Use Regulation (2d Ed. 1992), p. 335.
 X
The plaintiffs next argue that the plan approved by the commission fails to comply with §§ 35-2.3.1, 35-2.3.2, the CT Page 10795 regulatory requirements for landscaping parking areas. The commission expressly found that the application conformed to the standards for landscaping and conformed to § 35-2 of the regulations. Section 35-2.3.1. of the regulations, entitled "Location", provides: "On-site parking areas shall be planted with shade trees that are located entirely within the parking field as shown on the attached `Landscape Design Standards' except that no more than one required tree shall be located in each field corner." Section 35-2.3.2 of the regulations, entitled "Standards", provides: "All parking areas shall have at least one (1) shade tree for each ten (10) required off-street parking spaces. Each such tree shall be located in a porous island, esplanade, pot(s) or well(s) at least nine (9) feet in diameter or nine (9) feet on each side."
The plaintiffs claim that "[t]he application submitted ignores these regulations and places trees along the perimeter of the parking lot, thereby maximizing the number of parking spaces that can be fit on an already crowded site." A special permit application and site "plan must be in substantial compliance with the applicable regulations. See e.g. Michel v. Planning ZoningCommission, [28 Conn. App. 314, 324, 612 A.2d 778 (1992), cert. denied, 223 Conn. 923, 614 A.2d 824 (1992)]; cf. H STorrington Associates v. Lutz Engineering Co., 185 Conn. 549, 555,441 A.2d 171 (1981) (substantial compliance with mechanic's lien statutes sufficient); State v. Godek, 182 Conn. 353, 360,438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S.Ct. 1741,68 L.Ed.2d 226 (1981) (substantial compliance with court rule for acceptance of guilty plea sufficient); but see Resnick v. CivilService Commission, 156 Conn. 28, 32-33, 238 A.2d 391 (1968) (substantial compliance with civil service law not sufficient). Substantial compliance with a statute or regulation is such compliance with the essential requirements of the statute or regulation as is sufficient to assure its objectives. Wheeler v.District of Columbia Board of Zoning Adjustment, 395 A.2d 85, 90
(D.C.App. 1978); see Superior/Ideal, Inc. v. Board of Review ofCity of Oklahoma, 419 N.W.2d 405, 407 (Iowa 1988); City of KansasCity v. Board of County Commissioners of Wyandotte County,213 Kan. 777, 518 P.2d 403, 410 (1974). What constitutes substantial compliance, of course, is a matter depending on the facts of each particular case. Dorignac v. Louisiana State Racing Commission,436 So.2d 667, 669 (La.App. 1983)." Paige v. Town Plan ZoningCommission, Superior Court, Judicial District of Fairfield, No. 289197 (1993), 8 Conn. L.Rptr. No. 9, 273, 276 (1993), affirmed,35 Conn. App. 646, ___ A.2d ___ (1994). The objective of §§ 35-2.3.1, CT Page 1079635-2.3.2 is stated in § 35-1: "The following standards are intended to enhance the appearance and natural beauty of the Town and to protect and increase property values through preservation of existing vegetation and establishment of new screening and landscaping material. Specifically, these standards are intended to moderate heat, noise, glare and accumulation of dust, to shade, to provide privacy from noise and visual intrusion and to prevent the erosion of the soil, excess run-off of drainage water and the consequent depletion of the ground water table and the pollution of water bodies, watercourses, wetlands, and aquifers and to guide the safe circulation of cars and people to parking lots." After reviewing the applicant's landscaping plan, the court cannot hold that the commission acted illegally, arbitrarily or in abuse of its discretion in finding that the plan substantially complied with the regulations.
 XI
The plaintiffs' final claims are that the commission imposed illegal conditions. The plaintiffs first challenge that condition of the commission's approval which states: "The site plan shall be revised to state that the 51 overflow spaces are located on the ballfield." The form of the commission's decision is important to the resolution of this issue. After making numerous findings, the commission "resolved" that the application "for a Special Permit and Site Plan Approval to construct a synagogue in a Res[idence] AA zone . . . be Granted subject to the following conditions. . . ." The provision regarding revision of the site plan to state that "the 51 overflow parking spaces are located on the ballfield" is one of many provisions amalgamated under this joint special permit-site plan approval. Notwithstanding the form of the commission's decision, it is clear that this provision is not a modification to the site plan and not a condition to the granting of the special permit. Section 44-5 of the regulations confers broad power on the commission to modify site plans.[9] Although such broad authority arguably conflicts with General Statutes § 8-3[10]
no party has challenged this regulation. A trial court should be wary of mounting such a challenge sua sponte; Felsman v. ZoningCommission, 31 Conn. App. 674, 681, 626 A.2d 825 (1993);Connecticut Health Facilities, Inc. v. Zoning Board of Appeals,29 Conn. App. 1, 5-6. 613 A.2d 358 (1992); and will not do so here. The court concludes that this modification to the site plan is within the ambit of authority conferred on the commission by §§ 44-5, 44-5.3 of the regulations. CT Page 10797
The plaintiffs also challenge the imposition of two conditions on the special permit. See generally, Beckish v.Planning Zoning Commission, 162 Conn. 11, 291 A.2d 208 (1971);Farmington v. Viacom Broadcasting, Inc. 10 Conn. App. 190, 193-196,522 A.2d 318, cert. denied, 203 Conn. 808, 525 A.2d 523 (1987). This challenge, however, is contained in but two sentences in the plaintiffs' memorandum of law without any accompanying citation of legal authorities. This is not adequately briefing the issue. SeeMcKiernan v. Caldor, Inc., 183 Conn. 164, 166, 438 A.2d 865
(1981); Yale Literary Magazine v. Yale University, 4 Conn. App. 592,597, 496 A.2d 201 (1985), affirmed, 202 Conn. 672,522 A.2d 818 (1987). Accordingly, the issue is deemed abandoned. GraceCommunity Church v. Planning Zoning Commission, supra, 42 Conn. Sup. 259.
The appeal is sustained.
Bruce L. LevinJudge of the Superior Court